(No. 6520.   December 8, 1938.)

MARY DANILLS WOLL, Respondent, v. MATT COS-
TELLA and FANNIE L. COSTELLA, Husband and
Wife, Appellants.

[85 Pac. (2d) 679.]

Bissell & Bird and Frank Croner, for Appellants.

A. F. James, for Respondent.

BUDGE, J.—The controversy herein arose over the ownership of a strip of land a mile long, 37 feet wide, containing approximately two acres of land, said strip being along, adjacent to, or in the neighborhood of, the section line as fixed by a government survey of 1871 between sections 17 and 18, Twp. 1, S.R. 14, E.B.M.

Respondent and appellants, respectively, own, and have owned for some years, and have paid all taxes levied and assessed against adjoining half sections of land, described on the tax rolls as the W½ of section 17 and the E½ of section 18, all in twp. 1, S.R. 14, E.B.M., the title of both parties to their lands springing from patents from the United States government to their respective predecessors in interest.

About 1893 or 94, J. E. Danills, predecessor in interest of respondent, constructed a fence, referred to as the "old line fence," running in a northerly and southerly direction upon, or in the vicinity of, the section line between sections 17 and 18, which fence remained where originally located by Danills until 1936, at which time appellants put in a new string of fence posts approximately 37 feet east of the "old line fence" and removed the "old line fence."

This action was instituted by respondent, seeking to quiet title to the 37-foot strip, to enjoin appellants from threatened trespass, and for damages, alleging that respondent owns the land in controversy; that it has been held and used in actual,

adverse, open, notorious, continuous, uninterrupted and peaceable possession by respondent and her predecessor in interest for more than 30 years last past; and that the ''old line fence'' for a period of more than 30 years has been considered and acquiesced in by the respective owners of the lands, as representing and being the true dividing line between said lands. The court made findings of fact and conclusions of law in favor of respondent upon all three propositions, but found pecuniary damages had not been established. From the judgment entered in conformity with the findings and conclusions this appeal was taken.

While appellants' brief contains 14 assignments of error it is stated therein that appellants will:

''particularly discuss the first, second, third, ninth and fourteenth; contenting ourselves with a discussion of the other assignments as incidental to those just designated.''

▮ Appellants by their first and second assignments urge that the court erred in refusing to grant their motion to compel respondent to elect upon which of the alleged incompatible and divergent theories of the case respondent predicated her right of recovery, and in refusing to grant appellants' motion for nonsuit, urging that the doctrines of acquirement by adverse possession and the fixing of boundaries by acquiescence are incompatible with the theory of ownership by legal title and mesne conveyance. Appellants' argument appears to be to the effect that respondent, having alleged she owns the land in controversy, cannot consistently allege and prove that she acquired it by adverse possession or acquiescence in a boundary line, which argument does not appear to be supported by logic or law or well founded in fact for several reasons.

Respondent's complaint alleged the ultimate fact that she was the owner of the land in controversy. However, there is no allegation in the complaint to the effect that respondent relies upon any conveyance or specifically upon fee-simple title. The complaint does contain the further allegations that plaintiff and her predecessor in interest have been for more than 30 years in actual, adverse, open, notorious, continuous, uninterrupted, and peaceable possession of the lands and

have paid all taxes and assessments levied and assessed thereon to the date of the filing of the complaint, and, that for the same length of time the predecessors in interest of respondent and appellants, and respondent, have acquiesced in the "old line fence" as the true boundary line. It seems obvious that the allegation of the ultimate fact that one is the owner of property is not inconsistent with an allegation that the ownership was acquired by way of adverse possession or acquiescence in the boundary line, since the ultimate fact of ownership is that which must be proven.

In a suit to quiet title it is not necessary for the complaint to divulge the chain of title, or to reveal the probative facts, an allegation in ordinary and concise terms of the ultimate fact that plaintiff is the owner of the property being sufficient, without setting forth the probative facts, establishing the ultimate fact. (*Hammett v. Virginia Min. Co.*, 32 Ida. 245, 181 Pac. 336; *Ihly v. John Deere Plow Co.*, 35 Ida. 651, 208 Pac. 838; *Mascall v. Murray*, 76 Or. 637, 149 Pac. 517.) Title may be shown in any manner authorized by law. (*Mascall v. Murray, supra; Zumwalt v. Madden*, 23 Or. 185, 31 Pac. 400; *Cooper v. Blair*, 50 Or. 394, 92 Pac. 1074; *Savage v. Savage*, 51 Or. 167, 94 Pac. 182.) Under a general allegation of ownership proof may be made of the title by adverse possession. (*Raymond v. Morrison*, 9 Wash. 156, 37 Pac. 318; *Metropolitan Bldg. Co. v. Fitzgerald*, 122 Wash. 514, 210 Pac. 770; *Mascall v. Murray, supra; Smith v. Algoma Lbr. Co.*, 73 Or. 1, 143 Pac. 921; *Hamm v. Mc-Kenny*, 73 Or. 347, 144 Pac. 435.)

Authorities of this court which further substantiate the conclusion that an allegation of fee simple ownership is not inconsistent with the theories of acquirement by adverse possession or acquiescence in a boundary line are *O'Malley v. Jones*, 46 Ida. 137, 266 Pac. 797, wherein it is held:

"A finding as to an agreed boundary has the effect of extending and diminishing the limits of the deeds to include and exclude the parcel of land in dispute. Under such circumstances the payment of taxes assessed in this manner is a payment on the land in the possession of the parties. (*Price v. De Reyes*, 161 Cal. 484, 489, 119 Pac. 893.)"

and *Kesler v. Ellis,* 47 Ida. 740, 278 Pac. 366, which case is cited with approval in *O'Malley v. Jones, supra.* See, also, *Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066.

It has also been held that there is no inconsistency between the finding of good record title and the finding of good title by adverse possession. (*H. & J. Mabury Co. v. Bryant,* 9 Cal. (2d) 586, 71 Pac. (2d) 1111; *President and Presiding Elder, etc., v. Goodwin,* 119 Cal. App. 37, 5 Pac. (2d) 973.)

There appearing to be nothing inconsistent about respondent's claims the court was not in error in refusing appellants' motion for nonsuit and motion to compel respondent to elect.

■ Appellants' third assignment of error "That the court erred in submitting any interrogatories to the jury" is based upon the proposition that it having been conceded by the pleadings that respondent and her predecessor in interest were, and for many years had been, the owners of, in possession of, and had paid taxes upon the $W\frac{1}{2}$ of section 17; and that a similar condition existed as to appellants' ownership, possession and payment of taxes on the $E\frac{1}{4}$ of section 18, the question of ownership and adverse possession were eliminated and only the question of fixing the boundary was left. Such contention has been answered against appellants' contention in *O'Malley v. Jones, supra, Kesler v. Ellis, supra,* and *Bayhouse v. Urquides, supra,* pertaining to the extension of boundaries as heretofore referred to.

The remaining assignments of error relate to the correctness of the court's findings, conclusions and judgment and to the sufficiency of the evidence.

Certain special interrogatories were submitted to a jury, two of which interrogatories and the answers made thereto by an unanimous vote of the jury were as follows:

"When Joe Danills laid out the old fence did he consider that the true line? (Answer: Yes.)"

"For how long a time, if ever, did the plaintiff and her predecessors in interest and the defendant and his predecessors in interest mutually consider the old fence to be the true dividing line? (Answer: The plaintiff and her predecessors and defendant's predecessors considered the old fence line to

be the true dividing line until possession was taken by the Defendant.)''

The foregoing answers of the jury were accepted by the court and the following findings of fact were made, among others:

''That at the time the defendants dug said holes and erected said fence they also tore down and partly removed an old fence belonging to the plaintiff then erected along the west boundary line of said N.W.¼ of Sec. 17, which said fence had for a period of more than thirty years, been considered and acquiesced in by the respective owners of said land of the plaintiff and said land of the defendants as representing and being on the true dividing line between said land of the plaintiff and said land of the defendants.''

''That said old dividing (partition) fence as so laid out by the said Joe Danills and as it is now located is the true division fence and the true dividing line between the said E½ of said Section 18 and the said W½ of said Section 17, the land of the defendants and plaintiff respectively, and the plaintiff and her predecessors in interest for more than thirty years prior to the filing to the complaint herein considered said old partition fence to be the true dividing line between said tracts of land and during all of said period of time recognized said old partition fence as the true dividing line between said tracts of land.''

The court concluded:

''That the old dividing (partition) fence . . . . is the true division fence and true dividing line between the W½ of Section 17 and the E½ of Section 18 . . . . that the plaintiff is the owner of and entitled to the possession of all that portion of the above described lands lying east of said old partition fence and the defendants have no lawful right, title or interest in any of the land lying east of said old partition fence; . . . . ''

The record conclusively shows that the ''old line fence'' was built by Danills in about 1893, at a time when the adjoining lands in section 18 were unoccupied lands of the United States government. The evidence is uncontradicted that the fence built by Danills has remained in its original

location from 1893 to 1936, some 43 years. Upon at least two occasions Danills stated it was the correct boundary line. There is testimony by predecessors in interest and former occupants of the land of appellants that they had always considered the ''old line fence'' as being the correct boundary line. One Woods, an occupant of a portion of the land now belonging to appellants for some five or six years, related a conversation with Danills about 1907 to the effect that Danills told him the fence was the correct line. Woods further testified that during the whole time he had an interest in the lands adjoining he had always considered the ''old line fence'' as being the correct line. Nettie Woods Simpson, who filed upon and made proof of homestead upon a portion of the land now owned by appellants, testified that during all the time she lived upon the land (1904 to 1911), the ''old line fence'' was considered as the true dividing line, and that she had set a post close to the ''old line fence'' and then fenced around three sides of the remainder of her quarter. D. O. Reynolds, owner of the quarter formerly belonging to Mrs. Simpson from 1916 to 1919, and the owner of the south quarter formerly occupied by J. C. Woods, for about 8 months, testified that during his occupancy there was never any controversy as to whether or not the ''old line fence'' was the true line, and that he considered it the line. One John Wardrop who came to Camas Prairie in 1883, and who for a period of two years owned and lived upon a quarter section of land adjoining the north boundary of Danills' (respondent's) land, testified he was well acquainted with the ''old line fence,'' that he first saw it some 30 to 35 years ago, and that while building his own fence he asked Danills if his (Danills') fence was on the line, to which Danills replied: ''Yes, It is Johnny on the spot,'' and that he lined his fence up with the Canfield fence, the Canfield fence being a fence which lined up with the Danills fence. He further testified these ''fences all run north and south and really line up pretty well.'' The record does not disclose that any objection was ever made with relation to the location of the ''old line fence'' from the time it was built until removed by appellants, a period of some 43 years.

■■ From such evidence the case appears to fall within the rule announced by this court in *Kesler v. Ellis, supra,* and *O'Malley v. Jones, supra.*

"where 'there is no express agreement as to the location of the boundary line, adjoining proprietors cannot question a line which they have, for a considerable number of years, recognized as the correct line between their properties.' (1 Tiffany on Real Property, 2d ed., sec. 295, p. 999; 4 R. C. L., p. 129; 9 C. J., p. 232; *O'Malley v. Jones,* 46 Ida. 137, 266 Pac. 797.) While the authorities are hopelessly confused and generally uncertain as to the time the acquiescence as to the location of the boundary line should continue in order to satisfy the rule, it is but logical to say that such acquiescence must continue for a period of not less than five years, thus conforming to the period established by the statute of limitation in cases of adverse possession. (Cases.)" (*Kesler v. Ellis, supra.*)

"An agreement fixing a boundary line need not be shown by direct evidence, but may be inferred from conduct, and especially from long acquiescence. (9 C. J. 232; 5 Cyc. 933; 1 Tiffany on Real Property, 2d ed. 999.) A presumption that an agreement formerly was made as to the location of a boundary line may arise from the fact that such line has been definitely defined by the erection of a fence or other monument on it, and that the adjoining owners have treated the same as fixing the boundary between them for such length of time that neither ought to be allowed to deny the correctness of its location. (4 R. C. L. 129.)" (*O'Malley v. Jones, supra.*)

"Long acquiescence ought to also preclude a controversy that will involve rights that have been unquestioned for a generation." (*Bayhouse v. Urquides, supra.*)

See, also, *Baldwin v. Brown,* 16 N. Y. 359; *Reed v. Farr,* 35 N. Y. 113.

From what has been said it follows that the judgment must be affirmed and it is so ordered. Costs to respondent.

Holden, C. J., and Morgan, Ailshie, and Givens, JJ., concur.