(No. 7245.　November 23, 1945.)

CLYDE STRAHORN and ANNA W. STRAHORN, husband and wife, Plaintiffs-Respondents, v. MARY ELLIS, a widow, and PETER KELLAS, Defendants-Appellants.

[165 P. (2d) 294.]
Rehearing denied December 18, 1945.

Frank Griffin for appellants.

Whitla & Knudson for respondents.

MILLER, J.—This action was instituted October 18, 1943, by Clyde Strahorn and Anna W. Strahorn, husband and wife, respondents, as the owners of the N½ of tract 70, Avondale Irrigated Tracts, being the N½SE¼SE¼NE¼ of section 13, township 51 N., R. 4, W.B.M., Kootenai County, Idaho, for the purpose of restraining and enjoining the appellants, Mary Ellis, a widow (whose true name is Marie Ellis), and Peter Kellas, from in any manner interfering with respondents' property lying north of the boundary line that has existed between appellants' and respondents' property since prior to 1907. The record discloses that the respondent, Clyde Strahorn, purchased the above described property in 1907. That at the time he purchased said property there was a fence dividing the N½ and the S½ of said tract. That immediately after said respondent purchased the N½ of said tract he commenced and has continuously farmed and occupied all that portion of said tract 70 lying north of a division fenceline. Shortly

after he purchased the property he built a small shack in which he lived until 1911, when he built permanent improvements consisting of a house, a barn and other outbuildings. His dwelling house was built in the southeast corner of said tract, leaving a driveway between his house and the boundary fenceline, which driveway he has continuously used as such to gain entrance to his buildings from the highway, which runs along the east side of said tract 70. He constructed a gate in the southeast corner of said tract, using the corner fencepost as a gate-post. During the same year he constructed a barn, the south end of which was built immediately adjacent to the boundary fence then existing, and said permanent buildings have continuously remained as built since the year 1911. At the time respondents purchased said property a Mr. Beldon owned and occupied the S½ of tract 70. Mr. Beldon lived there some ten or twelve years, and both Mr. Strahorn and Mr. Beldon farmed their respective properties continuously, each recognizing the division fence as it then existed as the division line between their said properties. There was no contention between them that the division fence was not the boundary line of their respective properties. A Mr. Cromwell purchased the property from Mr. Beldon and owned and occupied the same for a period of approximately two years, and no question arose between Mr. Cromwell and Mr. Strahorn as to the division fence constituting the boundary line. Mr. and Mrs. Ellis acquired the property immediately south of the N½ of said tract from Mr. Cromwell in 1922. Later Mr. Ellis built a barn adjacent to the boundary fence, as it then existed, and during the time that Mr. and Mrs. Ellis lived there no mention was made, nor did any question arise, regarding the location of the division fence, or that it was not on the boundary line. Mr. Ellis died in 1932. There never was any serious dispute that the partition fence did not constitute the true boundary line between the north and south half of said tract 70 until after the death of Mr. Ellis. In August, 1943, Mrs. Ellis caused a survey to be made, from which it appears that the partition fence is six feet south of the boundary line on the west side and ten feet south of the boundary line on the east side, as evidenced by exhibit "A". In 1943 the partition fence west of respondents' barn was partially removed by appellant Kellas and it was due to the removal thereof that this action was instituted. The

case was tried to the court without a jury. The pleadings consist of the complaint, a demurrer thereto, which was overruled, an answer denying the material allegations of the complaint, an affirmative answer and a cross-complaint, which sought to have the complaint dismissed, the restraining order dissolved, and title to the north 140 feet of the S½ of tract 70 quieted in appellant, Marie Ellis, and that respondents be enjoined from interferring with the erection of a fence by appellants on the line dividing the N½ and the S½ of tract 70.

The court found that the respondents, Clyde Strahorn and Anna W. Strahorn, purchased the N½ of tract 70 of the Avondale Irrigated Tracts November 4, 1907, and that they have resided thereon continuously since 1909. That at the time they purchased said property there existed a fence marking the south boundary line thereof. That in the year 1909 they built a house and barn thereon and that the barn was constructed immediately adjacent to the south boundary line of said tract as established by the fence then existing on the south boundary line of said tract. That continuously since the year 1909 they have farmed and occupied all of the property of said tract up to the boundary line as established by said fence. That since establishing the improvements on said property they have continuously used a driveway from the public road on the east side of said tract, which driveway is south of respondents' house and adjacent to the north side of said fence line. That Mrs. Ellis built a barn immediately adjacent to said line fence. That there is a substantial fence along the east boundary line of appellant's property and that there is a substantial corner post between the properties of respondents and appellant, Mrs. Ellis. That if the boundary line as contended for by appellants should be established as a true boundary line such boundary line would intersect and cut through respondents' barn to the extent of eight or nine feet and would necessitate respondents moving or cutting off a portion of their barn to conform to such line. The court further found that the appellants have caused to be removed that portion of the original boundary line fence westerly from respondents' barn to the west side of said tract 70, and that they have constructed another fence upon the line that appellants contend is the boundary line between said properties, and that appellants should be required to remove the fence they have so constructed. The

court further found that at the time respondent Clyde Strahorn purchased the N½ of said tract 70 the property immediately south was owned by a Mr. Beldon; that Mr. Beldon and respondent occupied and farmed their respective lands for a period of twelve or thirteen years and during all of said time there never was any controversy that the fence as it then existed was not the property line between said properties. That following Mr. Beldon's ownership of the south portion of said tract, a Mr. Cromwell owned and occupied the same for a period of approximately two years, during which time there was no dispute over the boundary line; that there never was any serious dispute relative to the boundary line between the north and south half of said tract until after the death of Mr. Ellis in the year 1932, notwithstanding the fact that they had possessed the property immediately south of said boundary since in the year 1922. The court further found that under the evidence and the law respondents are entitled to have the original fenceline, as it existed at the time respondents purchased their property, established as the south boundary of respondents N½ of said tract. That the appellants and any person or persons claiming or to claim under said appellants should be restrained and enjoined from interferring with the respondents or any person claiming or to claim under respondents in the use, possession and enjoyment of the property immediately north of and adjacent to the line as herein found to be the true boundary line between the N½ and the S½ of said tract 70. The court also found that the reasonable cost of reconstructing the fence which the appellants removed west of respondents' barn is $50.00, and that appellants should be required to replace the fence they so removed, and in the event they do not replace such fence within a reasonable time, to-wit, 140 days, the respondents should be entitled to recover from the appellants said sum of $50.00 as damages for the wrongful removal thereof. The court further found "that the appellants are not entitled to any relief whatever under or by virtue of their cross-complaint herein". From said findings the court concluded that respondents are entitled to a decree perpetually enjoining and restraining the appellants, their agents and employees, and any person or persons claiming by, through or under said appellants, from further or in any manner interfering with respondents' property lying north of the

boundary line, as found and fixed by the court; that the appellants are required to rebuild the westerly portion of the boundary fence and in the event they shall fail, neglect or refuse to reconstruct said fence within the period of 140 days from the time of the decree herein, the respondents shall have and recover under and from the appellants the sum of $50.00 as damages for their failure or refusal to reconstruct said fence; that the south boundary line of respondents' land involved in this action be decreed and determined to be along the fenceline as it existed prior to the filing of this action, to-wit, from the south end of respondents' barn westerly along the old fenceline to the west side of tract 70, of and from the south end of respondents' barn along the old fenceline to the corner post, which corner post is immediately south of respondents' gateway entrance to their property. A decree in accordance with said findings and conclusions was filed December 15, 1944, and notice of appeal was filed March 1, 1945.

Appellants specify numerous assignments wherein the trial court erred. We think it necessary to consider only those specified errors as contained in points X and XI, and wherein it is stated:

"X. Where an affirmative defense is interposed, a general finding that the defendants are not entitled to any relief, by virtue of their affirmative defense or cross-complaint, is not sufficient. * * *

"XI. In an action to quiet title, where such title is based on adverse possession, the payment of taxes is a material issue and a positive finding on the issue of the payment of taxes *must* be made."

Respondents rely on the cases of: *O'Malley v. Jones*, 46 Ida. 137, 266 P. 797; *Kessler v. Ellis*, 47 Ida. 740, 278 P. 366, and *Woll v. Costella*, 59 Ida. 569, 85 P. (2d) 679.

In the O'Malley-Jones case, supra, the facts being very similar to those in the instant case, it is said:

"A presumption that an agreement formerly was made as to the location of a boundary line may arise from the fact that such line has been definitely defined by the erection of a fence or other monument on it, and that the adjoining owners have treated the same as fixing the boun-

dary between them for such length of time that neither ought to be allowed to deny the correctness of its location. (4 R.C.L. 129.)   As was said in *Bayhouse v. Urquides,* 17 Ida. 286, 105 P. 1066:

" 'There is another reason why appellant should not be disturbed in his possession of this property even though it did not actually constitute a part of lot 9.   For more than forty years he and his grantor, O'Campo, have been in the actual, peaceable, and quiet possession of the land in question, and have had it included within their inclosure and have erected permanent improvements thereon, and the rule of long and immemorial acquiescence ought to be invoked against respondent at this late date. . . Statutes of limitation or repose have been enacted to guard against such cases and protect parties against the loss of witnesses, and the frailty of human memory.   Long acquiescence ought to also preclude a controversy that will involve rights that have been unquestioned for a generation.' * * * Great stress is laid by appellants upon what they contend is a positive showing that they have paid the taxes upon the disputed strip.   Let it be conceded that both parties have paid all taxes assessed upon their holdings as conveyed to them by their respective conveyances.   A finding as to an agreed boundary has the effect of extending and diminishing the limits of the deeds to include and exclude the parcel of land in dispute.   Under such circumstances the payment of taxes assessed in this manner is a payment on the land in possession of the parties.   (*Price v. De Reyes,* 161 Cal. 489, 119 P. 893.)"

In the Kessler-Ellis case, supra, likewise in point as to boundary lines, the doctrine announced in the O'Malley-Jones case is adhered to and it is stated:

"Apparently, * * * Surveyor Wilson at the time he ran the line between the lands of Shuler and Kennedy, extended that line to the west line of said section 26.   We think the case falls within the general rule that where 'there is no express agreement as to the location of the boundary line, adjoining proprietors cannot question a line which they have, for a considerable number of years, recognized as the correct line between their properties.' (Citing authorities.)"

The author then invites attention to the O'Malley-

Jones case, supra, relative to the payment of taxes, as being a tax payment on the lands in the possession of the parties. See, also, *Woll v. Costella,* supra, in which the facts are almost identical, and the rule announced in the former cases is upheld. Therein it is said:

"While the authorities are hopelessly confused and generally uncertain as to the time the acquiescence as to the location of the boundary line should continue in order to satisfy the rule, it is but logical to say that such acquiescence must continue for a period of not less than five years, thus conforming to the period established by the statute of limitation in case of adverse possession."

The case of *Tanner v. Stratton* (Utah), 139 P. 940, is identical with the instant case. The plaintiff alleged that she is the owner of certain real estate in Utah County; that defendant entered upon it and removed a fence to plaintiff's damage. The prayer is for a "perpetual restraining order" and for damages. The defendant alleged that he is the owner of land adjoining that of plaintiff, and that the boundary line between the two tracts was for more than twenty-five years by their predecessors in interest fixed and established by the building of a fence as and for a boundary line, and as such was accepted, recognized and acquiesced in by all parties concerned for all those years, and not questioned by anyone until plaintiff, who shortly after she acquired title to the land, tore the fence down and reconstructed it on defendant's land. The whole dispute is with respect to the boundary line, and the court says:

"The evidence shows that until plaintiff acquired the land described in her complaint each party in interest occupied and cultivated his parcel up to the fence, and neither claimed beyond it. The fence was originally placed upon a line as fixed by the county surveyor. It is claimed by plaintiff that the survey was not accurate. According to subsequent surveys the fence is not on the true line. So the plaintiff, shortly after she acquired the land described in her complaint, took the fence down and reconstructed it on the line as indicated by the later survey. The defendant tore it down and threw it back on plaintiff's land. Then the lawsuit was commenced. * * * On the record the boundary line is either as indicated by the old fence, or as

shown by the surveys. There is no room for middle ground. * * * All this indicates, not only a mere recognition and acquiescence in the old line fence as and for a boundary line, but consent as well, facts from which consent may be implied. The record without any substantial dispute clearly shows the old fence line for the entire distance was recognized, treated, and acquiesced in by plaintiff's predecessors in interest, and by defendant and his predecessors, for many years, as and for a boundary line, each occupying and claiming up to that line, and neither beyond it. There is no doubt of that. But the plaintiff after she acquired her land chose not to be bound by the old fence, and, regardless of how long it had been there, the purpose for which it was put up or maintained, or the circumstances under which it was treated and recognized by her predecessors in interest, sought to have the line fixed and adjudged as shown by the later surveys, which she insists is the true line. This she may not do. (Citing authorities.) The judgment is not in harmony with them."

In the case of *Meyer v. Schoeffler*, 39 Ida. 500, 227 P. 1061, it is said:

"And this is not a case where the owners of adjoining lands, being uncertain of the location of the boundary line between their lands, agree upon its true location, construct fences accordingly and occupy up to the line established, thereby making the line marked by them the true line. In such a case the payment of taxes according to the descriptions in their deeds has been held to constitute the payment of taxes up to the boundary line agreed upon by them."

Resorting to the specified errors as contained in points ten and eleven, heretofore quoted, we think there is no particular merit therein. The trial court did find that the appellants were not entitled to any relief whatever under or by virtue of their cross-complaint. Any finding in that connection based upon the record would have been adverse to appellants. As stated in the case of *Marysville Development Company v. Hargis*, 41 Ida. 257, 239 P. 522, " 'A judgment will not be reversed for want of finding by the lower court, unless it appears from the record that there was evidence before the court from which it was required to make a finding which would countervail its other

findings.' " In the case of *Fehr and Harbert v. Haworth, et al*, 33 Ida. 96, 190 P. 248, it is said: "Findings of fact are to be liberally construed in support of the judgment, especially in the absence of request made to the trial court to make its findings more definite and certain." Likewise, in the case of *Brown v. Macey*, 13 Ida. 451, 90 P. 399, it is said:

"And yet if the issues thus made are not made material and substantial, and do not constitute a defense to the plaintiff's action, then certainly findings thereon could not affect the judgment of the court one way or the other. In other words, whether the court find the allegations of the answer true or false would make no difference in the final judgment entered upon the allegations of plaintiff's complaint. Viewed in this light there would be no error in failing to find upon such issues if in fact they are not material and do not constitute a legal defense to the plaintiff's action." (See, also, *Bowers v. Cottrell*, 15 Ida. 221, 96 P. 936; *Montpelier Milling Co. v. City of Montpelier*, 19 Ida. 212, 113 P. 741.)

In the case of *Storey v. Nampa and Meridian Irr. Dist.*, 32 Ida. 713, 719, 187 P. 946, it is said:

"* * * a judgment will not be reversed for want of a finding unless it appears that there was evidence before the court from which it was required to make a finding which would counteravail its other findings. (*Winslow v. Gohransen*, 88 Cal. 450, 26 P. 504; *Rogers v. Duff*, 97 Cal. 66, 31 P. 836; *Bliss v. Sneath*, 119 Cal. 526, 51 P. 848; *Carpenter v. Bailey*, 127 Cal. 582, 60 P. 162; *People v. McCue*, 150 Cal. 195, 88 P. 899; *Terry v. Southwestern Building Co.* (Cal. App.), 185 P. 212)."

In the case of *Koon v. Empey*, 40 Ida. 6, 231 P. 1097, it is said:

"Findings are ordinarily required on all material issues, but the trial court is not required to make findings on issues not sustained by the evidence and upon questions unnecessary to the determination of the cause." See, also, *Harris v. Chapman*, 51 Ida. 283, 5 P. (2d) 733.

In the case of *Reid v. Keator*, 55 Ida. 172, 39 P. (2d) 926, it is said:

"We have carefully examined each of the issues on which it is contended by appellant that a finding should have been made, and express it as our opinion that because the trial court adopted the plaintiff's theory of a joint venture by the parties, and rejected the appellant's theory that the money advanced by Atkin was merely a loan, the findings on the issues pointed out by appellant, if made, would have been adverse to appellant."

In the case of *Wood v. Broderson*, 12 Ida. 190, 85 P. 490, it is said:

"The rule is well established in this state that when the court fails to find on all of the material issues, the judgment will be reversed, unless a finding thereon either for or against the successful party, would not affect the judgment entered. (*Tage v. Alberts*, 2 Ida. 249, 271, 13 P. 19; *Standley v. Flint*, 10 Ida. 629, 79 P. 851; *Carson v. Thews*, 2 Ida. 176, 9 P. 605; *Bowman v. Wyers*, 2 Ida. 304, 13 P. 346; *Haight v. Tyron*, 112 Cal. 4, 44 P. 318.)"

This court has repeatedly held that where conflicting evidence is submitted to a trial court sitting without a jury the findings of the trial court will not be disturbed, where there is competent evidence to support them. (*Checketts v. Thompson*, 65 Ida. 715, 152 P. (2d) 585.) Also, the presumption is that the decree of the trial court is correct, and that its judgment will not be set aside unless there is a clear preponderance of the evidence against it. (*Wieri v. Anaconda Copper Milling Co.* (Mont.), 156 P. (2d) 838.)

We think the rule is well established in this jurisdiction that where there has been a long period of acquiescence by adjoining property owners, and their predecessors in interest, in recognizing a partition fenceline as the boundary line between their lands, together with what has been said, it follows that the judgment of the trial court must be affirmed, and it is so ordered. Costs to respondents.

Ailshie, C.J., Budge, Givens and Holden, JJ., concur.