262 P.2d 1006

**EDGELLER v. JOHNSTON et al.**

No. 7968.

Supreme Court of Idaho.

Nov. 3, 1953.

Clay V. Spear, Sidney E. Smith, Coeur d'Alene, for respondent.

Whitla & Knudson, Coeur d'Alene, for appellants.

THOMAS, Justice.

On July 15, 1951, respondent, hereinafter referred to as plaintiff, filed an action to quiet title against appellants, hereinafter referred to as defendants, to the south 13 feet of the North Half (N½) of Tract 91,

Avondale Irrigated Tracts, Kootenai County, Idaho.

The Avondale Tract was opened up in 1910 or 1911 and platted into ten-acre lots. U. S. Highway No. 95 now runs along the west side of Tract 91. The North Half (N½) of said tract as inclosed, exclusive of the 13 foot strip in dispute, contains approximately 4.32 acres. The property of the plaintiff, described in the deed as the North One Acre of the South Half (S½) of Tract 91, contains within her fence lines, including the 13 foot strip, approximately .944 acre; excluding the disputed strip it would contain .758 acre.

On June 6, 1912, a Mr. Nygren acquired title by deed to what was described therein as the South Half (S½) of said Tract 91; one Mr. Brandt at a date not disclosed in the record likewise acquired title by deed to what is described therein as the North Half (N½) of said Tract 91; these respective tracts were divided by a fence running east and west the entire length of the tracts. No dispute in connection with this fence arose until the year 1947 nor was its location changed at any time prior to 1948.

On September 29, 1931, Nygren conveyed the South Half (S½) of Tract 91 to one Bergstrasser. On July 20, 1936, the defendants, by deed, acquired title to what was described therein as the North Half (N½) of Tract 91; on August 31, 1943, Bergstrasser and his wife deeded to the plaintiff what was described in the convey-ance as the North One Acre of the South Half (S½) of said Tract 91; at the time of the consummation of this transaction, plaintiff inspected the property and Berg-strasser informed her then that the northerly boundary of the tract conveyed to her was bounded by the fence line now in dispute, that is, the fence which divided the North Half (N½) and the South Half (S½) of Tract 91.

A survey made by defendants in 1947 disclosed that this boundary line fence was located 13 feet north of the true boundary line between the respective tracts; however, at all times prior to 1923 until in the fall of 1948, this fence, although somewhat in a state of disrepair, had remained at the original location and no dispute or controversy had arisen in connection therewith.

In the summer of 1946, the easterly portion of said fence for a distance of approximately 336 feet being in a bad state of repair, plaintiff had all the posts taken out and the wire therefrom rolled up and given to a neighbor, and she commenced the construction of a new fence on the exact line of the old fence and did set new fence posts on such line for a distance in excess of 336' from the east boundary toward the west boundary line. Before the construction of the fence was completed and in 1947 defendants caused a survey of the line to be made; thereafter, and in the year 1948, defendants proceeded to remove many of the new posts set by plaintiff,

all against the protests of plaintiff, and built a new fence 13 feet south of the old boundary fence line, also against the repeated protests of plaintiff.

The boundary line fence between the respective tracts was substantial and constructed of wooden posts regularly spaced and set in the ground about one foot and extending above the surface of the ground about five feet, and had attached thereto three or four strands of barbed wire and extended across the entire Tract 91 from east to west from prior to 1923 to about 1940 when the westerly portion thereof had deteriorated and the wire therefrom was used by a lessee of defendants to construct a fence running north and south on the west side of defendants' property.

When plaintiff acquired the property there were permanent improvements located thereon consisting of a two-story building set on a cement foundation which was originally a barn constructed prior to the year 1923 and which was remodeled into a house in 1942 by Bergstrasser, a two-story chicken house with cement floor and foundation constructed by Bergstrasser in 1938, a small garage moved there by Bergstrasser in 1942 and an older barn. Additionally, there had been constructed or placed upon the premises by plaintiff or her predecessors in interest other permanent improvements including a two-story brooder house which was also constructed upon a cement foundation. All of said buildings protrude north of the line which

defendants contend is the true boundary line between the respective tracts for variable distances ranging from about 4' to approximately 11'.

If the boundary line is established as contended by defendants as the true boundary line, it would intersect and cut through the house, the garage, a chicken house and two sheds, all of which are permanent improvements and buildings located upon the premises and continuously used and occupied by plaintiff since August, 1943.

When defendants purchased the North Half (N½) of said Tract in 1936 they knew of the existence of the old line fence now in dispute. Neither they nor their predecessors in interest either used or occupied any of the lands south of this fence line prior to the fall of 1948. The plaintiff and her predecessors in interest have at all times prior to the fall of 1948 used, occupied and enjoyed all the property south of the old boundary fence line in the usual, ordinary and accustomed manner for farming and poultry raising purposes.

The property of defendants and their predecessors in interest was assessed as the North Half (N½) of Tract 91. The property of plaintiff's predecessors in interest was assessed as the South Half (S½) of Tract 91. The plaintiff's property was assessed as the North One Acre of the South Half (S½) of Tract 91; all such taxes so levied and assessed were paid by the respective parties. The plaintiff and her predecessors paid all the taxes levied and as-

364

sessed on the improvements located on the area in dispute.

Appellants have set forth numerous assignments of error, many of which are interrelated and overlapping but which in the main are primarily directed at the insufficiency of the evidence to support the findings made, the conclusions of law drawn therefrom, and the judgment entered.

We will not discuss the errors assigned in the order in which they are set forth nor necessarily separately but will consider every substantial question raised under the assignments.

■ Defendants urge that the court erred in overruling their demurrer to the complaint. Defendants contend that the complaint did not allege record title or any title under a written instrument in plaintiff, or that the property was inclosed, or any facts sufficient to constitute adverse possession. The complaint, in simple and concise language, in substance alleges that plaintiff is the owner and in the actual possession of the property, describing it; that plaintiff and her predecessors in interest have for more than twenty-one years had actual, adverse, open, notorious, continuous, peaceable and exclusive occupation and possession of, and paid all taxes levied and assessed against, said property for such period; that appellants claim an interest or estate in the property adverse to plaintiff which claim is without right or foundation.

The court did not err in overruling the demurrer. The complaint alleged in ordinary and concise language the necessary ultimate facts of ownership, possession, payment of taxes and adverse claim. This is sufficient without setting out the probative facts which go to establish the ultimate facts. Woll v. Costella, 59 Idaho 569, 85 P.2d 679; Hammitt v. Virginia Mining Co., 32 Idaho 245, 181 P. 336; Ihly v. John Deere Plow Co., 35 Idaho 651, 208 P. 838; Secs. 6–401 and 5–605, I.C.

■ Defendants contend that there is no evidence to support an agreed boundary between the conterminous owners and for this reason the finding that the plaintiff and her predecessors in interest held the disputed area adversely cannot stand. There is no direct evidence in the record of a mutually agreed boundary. A determination of this question must necessarily be made from the acts and conduct of the parties and their predecessors in interest, evaluated in the light of the surrounding circumstances. The evidence, free from material conflict, is to the effect that the plaintiff and her immediate predecessor in interest had been at all times since the year 1931 until the fall of 1948 in the exclusive possession of the disputed area and have cultivated and used the property therein in the usual and ordinary manner for farming and poultry raising, and did during such period place permanent improvements thereon; moreover, the occupation, use and enjoy-

ment thereof by either of them was never questioned by anyone prior to 1947 and no steps were taken to disturb plaintiff's possession until the fall of 1948 when defendants constructed a new fence 13 feet south of the old fence, not for the entire distance running east and west but extending only for a distance of approximately 336' from the east line to the barn of plaintiff.

There is substantial evidence, although not free from conflict, that the old fence was constructed prior to 1923, extending entirely across the property from east to west; that approximately 77' of the westerly portion thereof became deteriorated and that in about 1940 a lessee of defendants removed the wire from this portion of the fence and used it to construct a fence along the west portion of defendants' property. The remainder of the fence, although somewhat in a state of disrepair remained intact until the summer of 1946 at which time plaintiff pulled it down and commenced to construct a new fence on the exact line of the old fence. Posts were set, commencing at the east end of such fence line and running west for a distance of approximately 336' to the northwest corner of her barn. Before the fence was completed, and in 1947, defendants had the line surveyed and they removed many of the posts set by plaintiff; in 1948 defendants constructed a new fence 13 feet south of the old fence line, commencing at the east line and thence running west for a distance of approximately 336'.

■ An agreement, fixing a boundary line, need not be shown by direct evidence but may be inferred from acts and conduct and especially from long acquiescence. Kesler v. Ellis, 47 Idaho 740, 278 P. 366; O'Malley v. Jones, 46 Idaho 137, 266 P. 797. See also Campbell v. Weisbrod, 73 Idaho 82, 245 P.2d 1052 and the cases cited therein. Such an agreement may be presumed to arise between adjoining landowners where such right has been definitely defined by erection of a fence or other monument on the line followed by such adjoining landowners treating it as fixing the boundary for such length of time that neither ought to be allowed to deny the correctness of its location. Woll v. Costella, 59 Idaho 569, 85 P.2d 679; O'Malley v. Jones, supra; Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066.

■ A boundary line established by agreement, between tracts of conterminous owners, followed by acquiescence and possession for the full statutory period of time required to acquire title by prescription, operates to establish, determine and fix the true line or division separating, and the location of, the respective estates of such conterminous owners. Mulder v. Stands, 71 Idaho 22, 225 P.2d 463; Strahorn v. Ellis, 66 Idaho 572, 165 P.2d 294.

It follows that the parties, by their acts and the circumstances surrounding such, recognized and agreed upon the location of the boundary line and acquiesced in such location for a period of time in excess of

the requirements of the statute. Sec. 5–210, I.C.

■ Defendants contend and repeatedly stress and emphasize the asserted proposition that the evidence will not support a finding that plaintiff or her immediate predecessor in interest, Bergstrasser, paid any taxes or assessments levied and assessed upon the 13-foot portion of the North Half (N½) of Tract 91 which is in dispute. To support this contention defendants direct attention to the testimony wherein Bergstrasser testified that he purchased the South Half (S½) of Tract 91, which was all he bargained for or claimed and all he paid taxes or assessments on, and that he only sold to plaintiff the North One Acre of the South Half (S½) of Tract 91; also that all the tax receipts received in evidence disclosed that plaintiff's immediate predecessor in interest was only assessed for and paid all taxes and assessments on the South Half (S½) of Tract 91, as described in his deed; and that plaintiff was only assessed for and paid all taxes and assessments on the North One Acre of the South Half (S½) of Tract 91, as described in her deed; furthermore, that defendants and their predecessor in interest were assessed for and paid all taxes and assessments on the North Half (N½) of Tract 91; in connection with the matter of the payment of taxes we here observe that plaintiff and her predecessor in interest were assessed for and paid all taxes on the permanent improvements located on the disputed 13-foot area and which were within their fence lines.

Both parties, it must be conceded, have paid all taxes and assessments levied and assessed upon the lands as conveyed to them in their respective instruments of conveyance. However a finding, supported by substantial competent evidence, of an agreed boundary line has the effect of extending or diminishing the limits of the respective deeds to include and exclude the parcel of land in dispute; under such circumstances the payment of taxes and assessments in this manner is a payment on the land in possession of the respective parties and, hence, satisfies the requirements of the statute which requires the payment of taxes to perfect title by adverse possession. Calkins v. Kousouros, 72 Idaho 150, 237 P.2d 1053; Mulder v. Stands, 71 Idaho 22, 225 P.2d 463; Kesler v. Ellis, 47 Idaho 740, 278 P. 366; O'Malley v. Jones, 46 Idaho 137, 266 P. 797; Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066. The cases of Blayden v. Morris, 37 Idaho 37, 214 P. 1039, and Meyer v. Schoeffler, 39 Idaho 500, 227 P. 1061, cited by defendants, do not conflict with the views herein expressed.

■ Defendants assert that irrespective of the payment of taxes and the question of an agreed boundary line, the plaintiff, claiming title by adverse possession, not founded on any written instrument, judgment or decree, cannot prevail because she failed to prove that such lands so occupied

and possessed had been protected by a substantial inclosure as required by Sec. 5–210, I.C. The lands were bounded on the east and on the south by a substantial fence, which is not questioned, and also by a fence on the north since prior to 1923, as the court found upon substantial though conflicting evidence, and is bounded on the west by U. S. Highway 95.

The court further found upon substantial competent evidence that the land in dispute has been usually cultivated and improved by the plaintiff and her predecessors in interest. The court also found that during all of said period the property has been protected by a substantial inclosure.

The plaintiff is not claiming under a judgment, decree or written instrument. The statute, Sec. 5–210, I.C., provides that where title is claimed other than under a written instrument, judgment or decree, the land shall be deemed to have been possessed and occupied when, and only when, it has been protected by a substantial inclosure or has been usually cultivated or improved. The statute fixes these conditions one of which, but not necessarily both, must exist and be proven. Williams v. Stillwell, 217 Cal. 487, 19 P.2d 773; Phelan v. Drescher, 92 Cal.App. 393, 268 P. 465; Central Pacific Ry. Co. v. Tarpey, 51 Utah 107, 168 P. 554, 1 A.L.R. 1319; 2 C.J.S., Adverse Possession, § 26, page 540.

The court having found that the lands had been usually cultivated and improved, it is not necessary to, nor do we, decide whether the lands were protected by a substantial inclosure as contemplated by the statute.

Bergstrasser leased the property of defendants under an oral lease for a period of two years commencing on or about March 1, 1938. He held over for a few months beyond the expiration date of the term. The possession of the tenant is deemed the possession of the landlord until the expiration of five years from the termination of the tenancy; he cannot hold adversely to his landlord. If such relationship existed in respect to the disputed area the possession of Bergstrasser was not adverse to defendants until a few months subsequent to March, 1943. Cusic v. Givens, 70 Idaho 229, 215 P.2d 297; Sec. 5–211, I. C.

Bergstrasser testified with respect to the lease that he never had any agreement with defendants whereby he was renting any of the lands south of the disputed fence line which was intact at the time, but that he always possessed and claimed this land as his own. The court found that plaintiff and her predecessors in interest were in the actual, open, exclusive, continuous, notorious, uninterrupted and adverse occupation and possession of the 13-foot strip for over twenty-five years prior to the commencement of the action. This finding is supported by competent although conflicting evidence and will not be disturbed on appeal. Under the finding, the relationship of landlord and tenant did not

exist between Bergstrasser and defendants at any time with respect to the 13-foot strip.

While the evidence was in conflict in some material aspects, there was substantial, competent evidence to support all findings made by the court, sitting as a court of equity. This court, on appeal, will not disturb the findings of the trier of facts where such are supported by competent evidence. Ryan v. Day, Idaho, 258 P.2d 1146; Strahorn v. Ellis, 66 Idaho 572, 165 P.2d 294.

The judgment of the trial court is affirmed.

Costs to respondent.

PORTER, C. J., and GIVENS, TAYLOR and KEETON, JJ., concur.