499 P.2d 1242

**Eleanor Mae HYDE, a widow, Plaintiff-Respondent,**

v.

**Lloyd T. LAWSON and Vera C. Lawson, husband and wife, Defendants-Appellants.**

No. 10833.

Supreme Court of Idaho.

July 28, 1972.

Herbert S. Sanderson, Coeur d'Alene, D. J. LaPorte, Tacoma, Wash., for defendants-appellants.

E. L. Miller, Coeur d'Alene, for respondent.

McQUADE, Chief Justice.

In 1942 Fred and Emma Harshaw purchased the NW 1/4 of tract 98, Avondale Irrigation Tracts in Kootenai County, Idaho. In 1950 the Harshaws conveyed the east 1/2 of the NW 1/4 to William and Hazel Baack. Later in 1950 the Baacks decided to build a home on their newly acquired land, however, uncertainties arose regarding the true boundary line separating the Baack property from the remainder belonging to the grantors. Harshaw and Baack met and agreed to a boundary line and drove stakes to establish the boundary line between the two adjoining properties. After establishing the boundary line Baack constructed a home on his property. In the course of constructing that home, Baack employed Harshaw (the grantor) to perform certain labor.

In 1954 Baack sold the west 1/2 of the east 1/2 of the NW 1/4 of tract 98 to the plaintiff-respondent, Eleanor May Hyde and her husband. At the time of this sale the stakes driven in the ground in 1950 by Baack and Harshaw were pointed out to the Hydes as representing the west boundary of their property. The trial court found that the plaintiff maintained a lawn, hedges, trees and gardens, and that these improvements ran to the west boundary line as established by the stakes driven by Baack and Harshaw in 1950.

In 1955 defendants purchased the west 1/2 of the NW 1/4 of tract 98 from the Harshaws. From 1955 to 1967 there was no dispute between the Hydes and the defendants regarding the line dividing their respective properties. In 1967 the defendants had the property surveyed by a licensed surveyor. This survey revealed that the boundary line, as established by the stakes drive by Baack and Harshaw in 1950, was approximately eight to ten feet west of the true boundary. Shortly thereafter the defendants are alleged to have removed vegetation, trees, cut limbs from trees and built a fence along the surveyed line which cut off access to the west side of the plaintiff's house.

The plaintiff brought action to have title to the disputed area quieted in her favor by reason of adverse possession. The trial court found that the plaintiff and her predecessor had at all times since 1950 been in actual and notorious possession of the disputed strip of land; had paid all taxes levied upon the land according to the description contained in the deeds and entered judgment quieting title in the disputed strip of land.

The defendants appealed to this Court arguing that the trial court erred in admitting testimony of Baack regarding the circumstances surrounding the boundary line agreement with the deceased Harshaw. The defendants also assign as error that the evidence does not support the following findings of fact: that in April of 1950 Baack and Harshaw met and agreed upon a boundary line dividing their property by placing stakes in the ground along said line; that the stakes recovered by witnesses and identified at trial were those originally placed in 1950; that at the time of the sale to the plaintiff the stakes placed in 1950 were pointed out by Baack as marking the western boundary of plaintiff's property; that the plaintiff openly and notoriously occupied the property and planted additional hedges, trees and garden to the western boundary of the property as fixed by Baack and Harshaw in 1950; that at the time the defendants purchased their property the use, possession and occupation of the plaintiff was clearly open, visible and apparent to the defendants; that fol-

lowing a survey by a licensed surveyor the defendant claimed ownership of the disputed strip and erected a wooden fence which cut off access of the plaintiff to the west side of her home and that the defendants destroyed vegetation, trees and removed tree limbs.

Finally, defendants assign as error that the trial court's finding of fact XI, that the plaintiff and her predecessor had paid all taxes levied and assessed on their property, does not support its conclusions of law and fails to support the judgment of adverse possession.

■ Referring to the defendants' claim that the trial court erred in admitting the testimony of Baack regarding the agreement between himself and Harshaw establishing a boundary line dividing their property, we are of the opinion that this testimony was admissible. Baack was a party to the boundary agreement and testified to the circumstances surrounding the agreement with Harshaw. In Eagan v. Colwell,[1] this Court permitted testimony as to the reputed owner of disputed property and said:

> "We have previously held that evidence as to reputation regarding a boundary, and declarations of deceased persons with reference thereto, is admitted because of necessity and it is the best evidence available. (Citing cases). In this case the testimony was necessary to show the circumstances surrounding the * * * acquiescence in the north

branch of Trestle Creek as the boundary between the respective properties."[2]

The witness Baack was a party to the agreement made in 1950 and, other than the deceased Harshaw, was the only person available who could testify to the boundary agreement. Therefore, it was not error to admit this testimony because of necessity and because it was the best evidence available to show the circumstances surrounding the boundary agreement.

Before proceeding further we must determine whether an agreement, such as the one in the case at bar, fixing a boundary line is valid in light of the statute of frauds.[3] In Idaho Land Company v. Parsons,[4] this Court first permitted an oral boundary agreement and approved the doctrine that when coterminous owners of land, in good faith, agree upon and establish a boundary line between their respective tracts of land, the line so established is binding upon the parties and those holding under them.

In Downing v. Boehringer,[5] the Court considered the agreed boundary issue in light of the statute of frauds. In *Downing, supra,* the Court said:

> "Where the location of a true boundary line between conterminous owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in viola-

---

1. 86 Idaho 525, 388 P.2d 999 (1964).

2. 86 Idaho, at 530, 388 P.2d, at 1002.

3. I.C. § 9–505 provides: *"Certain agreements to be in writing.*—In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence therefore, of the agreement can not be received without the writing or secondary evidence of its contents: * * * 5. An agreement for the leasing, for a longer period than one year, or for the sale, of real property, or of an interest therein, and such agreement, if made by an agent

of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."
   I.C. § 55–601 provides: *"Conveyance—how made.*—A conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing."

4. 3 Idaho 450, 31 P. 791 (1892). *See also:* Edgeller v. Johnston, 74 Idaho 359, 262 P.2d 1006 (1953); Campbell v. Weisbrod, 73 Idaho 82, 245 P.2d 1052 (1952).

5. 82 Idaho 52, 349 P.2d 306 (1960).

tion of the statute of frauds (I.C. §§ 9–505 and 55–601) and is invalid. But, where the location of the true boundary line is unknown to either of the parties, and is uncertain or in dispute, such conterminous owners may orally agree upon a boundary line. When such an agreement is executed and actual possession is taken under it, the parties and those claiming under them are bound thereby. In such circumstances, an agreement fixing the boundary line is not regarded as a conveyance of any land from one to the other, but merely the location of the respective existing estates and the common boundary of each of the parties." [6]

In order for an oral boundary agreement to be valid the true boundary line must be unknown to the parties and is uncertain or in dispute. If the parties agree to a boundary under these circumstances, and thereafter take possession, pursuant to the agreement, they are bound. Such a boundary agreement is not a conveyance of land, and thus invalid under the statute of frauds for lack of a writing, but is merely locating and establishing the common boundary.

We now deal with the defendants' allegations on appeal that the evidence does not support the trial court's findings of fact. There is substantial and competent evidence in the record to the effect that the boundary line was agreed upon by Baack and Harshaw in 1950; that the stakes recovered by witnesses and identified at trial were those originally placed in the ground pursuant to the 1950 agreement; that at the time of the sale to the plaintiff the stakes placed in 1950 were pointed out as marking the western boundary of plaintiff's property; that after purchasing the property the plaintiff openly and notoriously occupied the property and planted additional hedges, trees and garden to the western boundary as disclosed at the time she purchased the property; that at the time the defendants purchased their property (1955) the use, possession and occupation of the plaintiff to the line, as established by Baack and Harshaw in 1950, was clear and apparent to the defendants; that following a survey by a licensed surveyor the defendants claimed ownership of the disputed strip of land, built a wooden fence that cut off access of the plaintiff to the west side of her house; that the defendants destroyed vegetation, trees and removed tree limbs in the disputed strip of land.

It has been a rule of long standing in this jurisdiction that findings of the trial court supported by substantial and competent evidence will not be disturbed on appeal.[7] The record in the case at bar clearly supports the trial court's findings of fact and therefore will not be disturbed by this Court.

Defendants' final assignment of error alleges that the trial court's finding that the plaintiff and her predecessor had paid all taxes levied and assessed on their property does not support its conclusions of law and fails to support a judgment of adverse possession. Defendants claim that because taxes were assessed and levied only on the land described on plaintiff's deed[8] that plaintiff has not satisfied the statutory requirement[9] of payment of taxes neces-

6. 82 Idaho 52, at 56, 349 P.2d 306, 308. See also: 12 Am.Jur.2d Boundaries, p. 619, § 78.

7. Thompson v. Fairchild, 93 Idaho 584, 468 P.2d 316 (1970); Eagan v. Colwell, supra, note 1; Shellhorn v. Shellhorn, 80 Idaho 79, 326 P.2d 64 (1958); Ryan v. Day, 74 Idaho 159, 258 P.2d 1146 (1953); Edgeller v. Johnston, supra, note 4; Lucky Five Mining Co. v. Central Idaho Placer Gold M. Co., 71 Idaho 490, 235 P.2d 319 (1951); Strahorn v. Ellis, 66 Idaho 572, 165 P.2d 294 (1945); Rule 52(a) I.R.C.P.

8. The west ½ of the east ½ of the NW ¼ of Tract 98, Avondale Irrigated Tracts, Kootenai County, Idaho, according to the recorded plat.

9. I.C. § 5–210 provides: "Oral claim—Possession defined—Payment of taxes.—For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judg-

sary to perfect title to the disputed strip by adverse possession.

Prior to dealing with the payment of tax element of adverse possession a discussion of the other statutory requirements is in order. I.C. § 5–210 requires that in order to obtain title by adverse possession the property must have been protected by a substantial inclosure and have been usually cultivated or improved in addition to the adverse occupation for a continuous five year period. The record clearly indicates that the disputed strip in question has been claimed by and in the possession of the plaintiff in excess of the required five year period. With regard to the other elements required by I.C. § 5–210, a hedge row has been held sufficient to satisfy the inclosure requirement for adverse possession purposes.[10] The record shows that plaintiff maintained a hedge row for more than five years along a portion of the boundary line agreed upon by Baack and Harshaw in 1950. In addition to the hedge, the record clearly indicates that the plaintiff maintained shrubs, flower gardens and trees along what she thought was the western boundary of her property. In citing the early Idaho case of Trask v. Success Mining Co.,[11] this Court in Smylie v. Pearsall,[12] said: "It is true that the character of the enclosure may vary somewhat from case to case ' * * * so long as it satisfies what is usual under the circumstances and indicates clearly the boundaries of the adverse occupancy * * *.' "[13] In Smylie, supra, the adverse possession claim was denied because the adverse claimant did not maintain any enclosure, natural or

otherwise, to indicate the extent of the claim. We are of the opinion that a hedge row, shrubs, flower gardens and trees, maintained along the boundary line for the requisite period of time has the same effect for adverse possession purposes, as would have a fence made of wood, metal or stone because the boundaries of the plaintiff's adverse occupancy were clearly indicated.

I.C. § 5–210 also requires that property adversely claimed by cultivated or improved. This Court in Trask v. Success Mining Co., supra, interpreted the word "improved" as used in the statute to mean "to change or make better, or to adapt it better to the purpose for which it is intended."[14] There is no doubt that the plaintiff improved that property now adversely claimed by planting hedge rows, flower gardens, shrubs and trees along what she thought was the western boundary of her lot. By so improving the property in question and clearly indicating the boundary of the adverse occupancy the plaintiff satisfied the requirement that the property adversely claimed be cultivated or improved.

With reference to payment of taxes on adversely claimed property, this Court in Edgeller v. Johnston, supra, said:

"Both parties, it must be conceded, have paid all taxes and assessments levied and assessed upon the lands as conveyed to them in their respective instruments of conveyance. However a finding, supported by substantial competent evidence, of an agreed boundary line has the ef-

ment or decree, land is deemed to have been possessed and occupied in the following cases only:
   1. Where it has been protected by a substantial inclosure.
   2. Where it has been usually cultivated or improved.
   "Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their

predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

10. McCosker v. Rollie Estates, Inc., 7 A.D. 2d 865, 182 N.Y.S.2d 35 (1959).

11. 28 Idaho 483, 155 P. 288 (1916).

12. 93 Idaho 188, 457 P.2d 427 (1969).

13. 93 Idaho 188, at 193, 457 P.2d 427, at 432.

14. 28 Idaho 483, at 492, 155 P.2d 288, 291.

fect of extending or diminishing the limits of the respective decds to include and exclude the parcel of land in dispute; under such circumstances the payment of taxes and assessments in this manner is a payment of the land in possession of the respective parties and, hence, satisfies the requirements of the statute which requires the payment of taxes to perfect title by adverse possession. (Citing cases)." [15]

In White v. Boydstun,[16] this Court said:

"[I]n the analogous situation concerning adverse occupation of land next to the boundary line between the property of the adverse claimant and his opponent, continuous adverse occupation will extend a true boundary line beyond the occupier's express deed limits, so that payment of taxes assessed on the deeded property is deemed payment of taxes on the lands in the claimant's possession. (Citing cases)

"The trial court's findings satisfy the tax payment requirements of I.C. § 5–210." [17]

As in *White, supra,* the findings in the case at bar satisfy the tax requirements of I.C. § 5–210 and the trial court did not err in quieting title by adverse possession in favor of plaintiff.

We therefore hold that the evidence supporting the findings is substantial and competent and that the payment of taxes by the plaintiff and her predecessor together with open and notorious possession of the disputed strip of land for a continuous period of more than five years, justifies the trial court's judgment quieting title in the plaintiff by reason of adverse possession.

Judgment affirmed. Costs to respondent.

McFADDEN, DONALDSON, SHEPARD, and BAKES, JJ., concur.

15. 74 Idaho 359, at 366, 262 P.2d 1006 at 1010.

16. 91 Idaho 615, 428 P.2d 747 (1967).

17. 91 Idaho 615, at 622, 428 P.2d 747, at 754. *See also:* Beneficial Life Ins. Co. v. Wakamatsu, 75 Idaho 232, 270 P.2d 830 (1954) and cases cited therein.