(March 4, 1913.)

## HUGH CRAMER, Respondent, v. L. W. WALKER, Appellant.

[130 Pac. 1002.]

ADVERSE POSSESSION—PAYMENT OF TAXES—POSSESSORY CLAIMS—COMPETENCY OF EVIDENCE.

1.   In a suit to quiet title, where the defense sets up title by adverse possession and offers to prove payment of taxes by oral testimony, and objection is sustained to such evidence on the ground that it is not the best evidence, and the facts of the payment of taxes are brought out by the same witness on cross-examination, where no objection is made, the evidence is competent and must receive consideration by the court.

2.   Where W. settled upon, inclosed and occupied a town lot, and continued to occupy and possess the same from 1881 until the commencement of an action to quiet title in 1910, and it appears that W. paid the taxes levied and assessed against the property from 1881 down to the time of the commencement of the action, and that M., the holder of the legal title, did not pay any taxes until June, 1889, *held*, that W. had matured and perfected his title by adverse possession and the payment of taxes for a continuous period of five years prior to the payment of any taxes by M., and that the question of priority of payment of taxes thereafter, or the right of either party to have the property thereafter assessed in his name and to pay the taxes thereon, does not arise, and is immaterial for the purposes of determining the rights of the parties under their respective claims of ownership and adverse possession.

3.   Where one claims title to property by adverse possession under sec. 4043, Rev. Codes, it is not necessary that the five years' continuous, exclusive adverse possession and payment of taxes should have been immediately preceding the commencement of the action or at any special or particular time, but it is sufficient if the party claiming such title can establish any continuous five year period subsequent to the acquisition of the legal title by the adverse party during which he has complied with the statute in maintaining his open, notorious, continuous adverse possession and payment of taxes for such period.

4.   Under the territorial statute of 1875, "the ownership of or claim to or right of possession to any land within the territory"

was defined to be "real estate," and "the claim by or possession of any person, firm, corporation, association, or company to any land" was taxable, and under that condition of the statute where a controversy subsequently and after the issuance of patent from the government arises between the holder of the legal title and one claiming by adverse possession, the claimant by adverse possession may show that he occupied the land adversely and paid taxes thereon prior to the issuance of patent from the government.

5. On the question of payment of taxes annually, both by the holder of the legal title and the claimant by adverse possession, and as to the right of one to have the property assessed against himself and to pay the taxes thereon for the purpose of acquiring adverse possession against the true owner who also pays the taxes, concurring opinion in *Cavanaugh v. Jackson,* 99 Cal. 672, 34 Pac. 509, and *Carpenter v. Lewis,* 119 Cal. 18, 50 Pac. 925, cited with approval.

APPEAL from the District Court of the Fourth Judicial District for Blaine County. Hon. Edward A. Walters, Judge.

Action to quiet title. Judgment for plaintiff. Defendant appealed. *Reversed.*

Richards & Haga and McKeen F. Morrow, for Appellant.

The statutes of limitations began to run in favor of appellant when he entered the premises in 1881 under a tax deed, claiming adversely to all other persons, and openly manifested his intention so to claim. (2 Ency. of L. & P. 364; *Ewing v. Burnet,* 11 Pet. (U. S.) 49, 9 L. ed. 624; *Lewis v. New York & Hudson River R. R. Co.,* 162 N. Y. 202, 56 N. E. 540; *Sommer v. Compton,* 52 Or. 173, 96 Pac. 124, 1065; *Melvin v. Locks and Canals,* 5 Met. 15, 38 Am. Dec. 384; *Unger v. Mooney,* 63 Cal. 586, 49 Am. Rep. 100; *Kimball v. Lohmas,* 31 Cal. 154.)

Adverse possession for five years not only bars the remedy of the owner for recovery of the land, but divests his estate and title absolutely, and vests a perfect title in the claimant, with the result that nonpayment of taxes or lack of other factors of adverse possession after the bar of the statute are entirely immaterial. (2 Ency. of L. & P. 587–591, and cases cited, *Cannon v. Stockmon,* 36 Cal. 535, 95 Am. Dec. 205;

*Arrington v. Liscom,* 34 Cal. 365, 94 Am. Dec. 722; *Unger v. Mooney,* 63 Cal. 595, 49 Am. Dec. 100; *Southern Pac. R. R. Co. v. Whitaker,* 109 Cal. 268, 41 Pac. 1083; *Webber v. Clarke,* 74 Cal. 11, 15 Pac. 431; *Allen v. McKay,* 120 Cal. 332, 52 Pac. 828; *Taylor v. Horde,* 1 Burr. 119, 97 Eng. Reprint, 190; *Leffingwell v. Warren,* 2 Black. (U. S.) 599–606, 17 L. ed. 261; *Sharon v. Tucker,* 144 U. S. 541, 20 Sup. Ct. 720, 36 L. ed. 535; *Jackson v. Dieffendorf,* 3 Johns. (N. Y.) 269; *Moore v. Luce,* 29 Pa. 260, 72 Am. Dec. 629.)

McFadden & Brodhead, for Respondent.

The contention of respondent is that inasmuch as taxes have been assessed to both him and appellant each year, and that with some exceptions he has paid them first, that appellant has not acquired title by adverse possession. (1 Cyc. 1109; *Hayes v. Los Angeles Co.,* 99 Cal. 74, 33 Pac. 509; *Carpenter v. Lewis,* 119 Cal. 18, 50 Pac. 925; *Commercial Nat. Bank v. Schlitz,* 6 Cal. App. 174, 91 Pac. 750; *Turner v. Ladd,* 42 Wash. 274, 84 Pac. 866; *Clayton v. Feig,* 188 Ill. 603, 59 N. E. 245; *Maher v. Brown,* 183 Ill. 575, 56 N. E. 181.)

The statute of limitations did not commence to run in favor of appellant until April 5, 1884, even if it appeared that he had been in possession and paid all taxes from 1881.

"It is clear that prescription or adverse user will not mature into a title as against the United States, and that it will not avail as a defense unless the user has been adverse for the requisite period after the title passed from the United States." (*Mathews v. Ferrea,* 45 Cal. 51; *Wilkins v. McCue,* 46 Cal. 661; *Treadway v. Wilder,* 12 Nev. 108.)

"The statute of limitations will run against the purchaser of land from the United States in favor of one holding adversely only from the issuance of the patent." (*Steele v. Boley,* 7 Utah, 64, 24 Pac. 755; *Redfield v. Parks,* 132 U. S. 239, 10 Sup. Ct. 83, 33 L. ed. 327; 1 Cyc. 1113.)

AILSHIE, C. J.—This case involves the question of adverse possession. About 1881 the appellant went into pos-

session of block 9 in the townsite of Hailey. He owned lot 8 and built his residence so that it stood on both lots 8 and 9, extending about eight or ten feet onto lot 9. The evidence shows that he has occupied this property continuously since that time. Respondent's predecessor in interest, J. W. Morse, acquired the legal title to lot 9 some time in 1884, but prior to that he had laid claim to this lot. The townsite of Hailey had been platted and laid out by John Hailey, who entered the land under the desert land laws, but the patent did not issue until April 5, 1884. The evidence shows that the appellant has paid the taxes on the property continuously since 1881, and it also shows that respondent and his predecessor have paid the taxes on the same property continuously since 1889. The proof on the part of appellant of the payment of taxes from 1881 to 1889 consists of the oral testimony of the appellant himself. This evidence was objected to by counsel for respondent and after the testimony had been given the objection was sustained by the court. The objection was based upon the ground apparently that this testimony was not the best evidence but that the records would be the best evidence. Notwithstanding this objection and the ruling of the court sustaining the same, counsel for respondent on cross-examination brought out all these facts, and appellant testified positively that he had paid the taxes on the property continuously since 1881. This was clearly competent and admissible testimony, and the only objection that could be urged to it was that it was not the best evidence. Respondent, having brought it out, however, on cross-examination, cannot now on appeal object to its competency.

This evidence is clear and unequivocal that the appellant has paid the taxes on the property continuously since 1881. It has been suggested, however, that payment of taxes on the land prior to the issuance of a patent from the government and while the title was in the government of the United States would not serve to satisfy the requirements of the statute vesting title by adverse possession. It is clear that the payment of taxes on unpatented land could not vest any right or title as against the government, but this contest and con-

troversy is waged between two adverse claimants to the property where it is admitted that the title has passed from the government. As between these claimants, we see no reason why, if the property had been assessed, the payment of taxes thereon would not serve the same purpose in acquiring title by adverse possession as it would serve if the title had already passed from the government. Under the statutes of this territory in force in 1881, possessory claims were taxable. Real estate was defined to include "the ownership of or claim to or possession of or right of possession to any land within the territory," and sec. 5 of the revenue act of 1875 (1875 Sess. Laws, p. 479) provided that "the claim by or possession of any person, firm, corporation, association or company to any land shall be listed under the head of real estate." If, however, it be conceded, which may be done for the purposes of this case, that the payment of taxes could not inure to the benefit of one claiming title by adverse possession until after the title passed from the government, still the appellant shows that he had paid the taxes for at least five years continuously before respondent's predecessor appears to have ever paid taxes on this property. Patent issued for this land to John Hailey on the 5th of April, 1884. Respondent's predecessor Morse never paid any taxes on this lot until the 29th of June, 1889. On the other hand, if appellant had been, as the evidence shows, in the continuous adverse possession of the property from April 5, 1884, and had paid the taxes assessed against the property continuously during that period of time, his claim by adverse possession had matured and ripened into title on the 5th of April, 1889. The evidence shows that appellant paid the taxes that year eleven days prior to the payment by Morse, respondent's predecessor, or on the 18th of June. It is clear, therefore, to us that under the statute and the well-established rules of law applicable to acquiring title by adverse possession appellant had acquired the title to this property prior to June 29, 1889, the date on which Morse paid the first taxes. Walker's title by adverse possession was then perfect. Payment of taxes thereafter by the original owner of the legal title would not alter condition of appel-

lant's title. Where one claims title to real estate by adverse possession, when the five year period is completed he is under no more obligation to pay the taxes thereafter than he would be on any other property. In other words, the subsequent payment of taxes after the adverse title is complete is no longer necessary or essential to successfully defend or prosecute an action in support of such title. Under a claim of title to property by adverse possession, authorized by sec. 4043, Rev. Codes, it is not necessary that the five years' continuous, exclusive adverse possession and payment of taxes should have been immediately preceding the commencement of the action or at any special or particular time, but it is sufficient if the party claiming such title can establish any continuous five year period prior to commencement of the action and subsequent to the acquisition of the legal title by the adverse party during which he has complied with the statute in maintaining his open, notorious, adverse possession and payment of taxes for such period. (*Webber v. Clarke,* 74 Cal. 11, 15 Pac. 431; *Allen v. McKay,* 120 Cal. 332, 52 Pac. 828.)

Counsel have indulged in considerable argument over the rule of law applicable to the facts disclosed in this case with reference to the payment of taxes commencing with and subsequent to June, 1889. It seems that each party has paid the taxes every year since that time. Sometimes one party has paid the taxes first and other years the other party has been the first to make payment. It is not material to the determination of this case that we determine the rule of law which should apply in such cases. It seems, however, to us that the rule announced by Mr. Justice Harrison in his concurring opinion in *Cavanaugh v. Jackson,* 99 Cal. 672, 34 Pac. 509, is the correct rule to be applied in such cases. The same rule was adopted and followed in *Carpenter v. Lewis,* 119 Cal. 18, 50 Pac. 925.

From what has been said, it follows that the judgment in this case should be reversed. Judgment reversed and cause remanded, with direction that a new trial be granted, if re-

spondent desires a trial, on the question of payment of taxes by either party from 1881 to 1889. ˙Costs awarded in favor of appellant.

Stewart, J., concurs.

Sullivan, J., sat at the hearing but took no part in the decision.