388 P.2d 999

Alice M. EAGAN, Plaintiff-Respondent,

v.

W. C. COLWELL, Defendant-Appellant.

No. 9217.

Supreme Court of Idaho.

Jan. 29, 1964.

Greene & Hunt, Sandpoint, for appellant.

.Bandelin & Cogswell, Sandpoint, for respondent.

McQUADE, Justice.

Ellen Eagan was the common predecessor in interest of both appellant and respondent.

On October 26th, 1936, Ellen Eagan gave deeds to both H. C. Eagan, her son, and Essie Eagan, her stepdaughter. Respondent inherited the property from her husband, H. C. Eagan. Appellant purchased the Essie Eagan tract from the estate of Essie Eagan on November 17, 1958.

At the outset, it should be noted that descriptions contained in the deeds are erroneous. Respondent's deed purports to convey to her all that portion of the Northeast quarter of the Southwest quarter of section 16 lying east of Trestle Creek and consisting of thirty acres more or less. An examination of the maps submitted in this cause shows that Trestle Creek barely touches the Northeast quarter of the Southwest quarter. Although the deed calls for thirty acres, there is, at the most, only about a half an acre of land in the Northeast quarter of the Southwest quarter lying east of Trestle Creek. Respondent's deed also purports to convey to her all of that portion of the Southeast quarter of the Southwest quarter of section 16 lying east of Trestle Creek and north of the State Highway consisting of eight acres more or less. The description given does not in fact describe property in the Southwest quarter. A professional engineer surveyed the area and testified that he was unable to find any State Highway which ran through the Southeast quarter of the Southwest quarter. The surveyor further testified that the portion of the Southeast quarter of the Southwest

quarter lying east of Trestle Creek contains not eight, but 26.3 acres.

Appellant's deed is fully as confusing as respondent's. For example, his deed purports to convey to him all that portion of the Southwest quarter of the Southwest quarter of section 16 lying north of the State Highway being approximately 35 acres. This description includes the portion over which the dispute arose. The confusion lies first of all in the fact that the entire Southwest quarter of the Southwest quarter contains only 14.6 acres of private land. Secondly, although a highway runs along the side of the Southwest quarter of the Southwest quarter, it is not a State Highway, but a U. S. Highway. Finally, the highway does not run east and west as the deed indicates, but runs more to the north and south.

Appellant's deed goes on to describe all that portion of the Southeast quarter of the Southwest quarter of section 16 west of Trestle Creek and north of the State Highway, being 10 acres more or less. There is no property in the Southwest quarter which corresponds to this description. A portion of the Southeast quarter of the Southwest quarter is slightly west of Trestle Creek (although it is more north than west) but as pointed out before, there is no highway running through the Southeast quarter of the Southwest quarter.

A map furnished by the respondent in this cause and said to be a "* * * map accepted at that time * * * by the Surveyor General of Idaho * * *." bears the designation "East" where north should be. Due to this erroneous designation, what is in reality the Southeast quarter of section 16 appears to be the Southwest quarter of section 16. When this map is used, the Southeast quarter of section 16 conforms almost perfectly to the descriptions contained in the deeds.

In spite of the confusion engendered by the deeds, it appears that respondent and appellant's predecessor, Essie Eagan, harmoniously occupied the Southwest quarter of section 16 for approximately twenty-two years. Respondent maintains she and Essie Eagan agreed that the north branch of Trestle Creek should be the boundary line between their respective properties. This would give respondent a small portion of land in the Northeast quarter, approximately 26.3 acres in the Southeast quarter and approximately 6 acres in the Southwest quarter. Appellant disputes respondent's claim to the 6 acres in the Southwest quarter. As a matter of fact, two years after he purchased the Essie Eagan tract appellant began to build a fence which, if completed, would have completely cut off the respondent from the Southwest quarter. Respondent caused appellant's fence to be torn down and commenced this action to quiet her title to the 6 acre tract in the Southwest quarter.

Respondent based her title to the disputed parcel of land upon two theories; adverse possession and establishment of boundaries by mutual agreement. Appellant, on the other hand, based his claim of title to the property solely upon the fact that his deed purported to convey to him the Southwest quarter of the Southwest quarter of section 16. The trial court concluded that the respondent was entitled to prevail upon adverse possession and upon the establishment of boundaries by mutual consent and entered judgment for respondent. It is from this judgment that appellant predicates his appeal and assigns error directed to the findings of fact of the trial court.

■ Appellant contends that the trial court committed error in finding that the respondent had satisfied the statutory requisites of adverse possession. The statute in question, I.C. § 5–210, provides that:

"For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cultivated or improved.

"Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

■ There is substantial, competent evidence to the effect that; 1. the disputed property has been occupied and claimed by respondent for over five years; 2. the disputed property has been protected by a substantial inclosure maintained by the respondent; 3. the disputed property has been farmed, leased and otherwise used by the respondent and 4. respondent and Essie Eagan agreed that the north branch of Trestle Creek should be the boundary line between their respective properties. Findings of the trial court supported by substantial and competent, though conflicting evidence, will not be disturbed on appeal. Edgeller v. Johnston, 74 Idaho 359, 262 P.2d 1006 (1953), Lucky Five Mining Co. v. Central Idaho Placer Gold M. Co., 71 Idaho 490, 235 P.2d 319 (1951).

Relative to the question of taxation, appellant insists that respondent failed to

prove that she had paid taxes on the disputed portion of land. The record shows that respondent's property was enclosed by a fence and that respondent had paid all taxes and assessments levied and assessed upon the property as described in her deed. As we stated in Edgeller v. Johnston, supra, 74 Idaho at page 366, 262 P.2d at page 1010;

"* * * a finding, supported by substantial competent evidence, of an agreed boundary line has the effect of extending or diminishing the limits of the respective deeds to include and exclude the parcel of land in dispute; under such circumstances the payment of taxes and assessments in this manner is a payment on the land in possession of the respective parties and, hence, satisfies the requirements of the statute which requires the payment of taxes to perfect title by adverse possession. Calkins v. Kousouros, 72 Idaho 150, 237 P.2d 1053; Mulder v. Stands, 71 Idaho 22, 225 P.2d 463; Kesler v. Ellis, 47 Idaho 740, 278 P. 366; O'Malley v. Jones, 46 Idaho 137, 266 P. 797; Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066. * * *"

In the trial court, a number of witnesses who were familiar with the Trestle Creek area were permitted to testify that the respondent was the reputed owner of the disputed property. Respondent was also allowed to testify concerning statements that Ellen Eagan (the common predecessor in interest) had made concerning the boundaries before the execution of these respective deeds. Appellant contends that the trial court erred in admitting this testimony. We have previously held that evidence as to reputation regarding a boundary, and declarations of deceased persons with reference thereto, is admitted because of necessity and because it is the best evidence available. Lucky Five Min. Co. v. Central Idaho Placer Gold M. Co., supra, Case v. Ericson, 44 Idaho 686, 258 P. 536 (1927). In this case the testimony was necessary to show the circumstances surrounding the original boundary agreement and the acquiescence in the north branch of Trestle Creek as the boundary between the respective properties.

The record reveals that the appellant was not deceived as to the boundary lines when he purchased this property. He testified that he knew that the disputed tract had been enclosed, farmed and occupied for many years by the respondent. The trial court having found for respondent and there being substantial, competent evidence to support this finding it will be not disturbed on appeal. The judgment is affirmed with directions to the trial court to examine the descriptions to assure their accuracy, and to make such corrections in the descriptions as may be necessary to describe the property owned and possessed

by the respondent in conformity with the findings of fact and conclusions of law.

Costs to respondent.

KNUDSON, C. J., and McFADDEN, TAYLOR, and SMITH, JJ., concur.