428 P.2d 747

Raymond L. WHITE and Mary B. White, husband and wife, Plaintiffs-Respondents,

v.

Neal BOYDSTUN and Pearl N. Boydstun, husband and wife, Defendants-Appellants.

Neal BOYDSTUN and Pearl N. Boydstun, husband and wife, Plaintiffs-Appellants,

v.

Raymond L. WHITE and Mary B. White, husband and wife, Defendants-Respondents.

No. 9811.

Supreme Court of Idaho.

May 24, 1967.

Rehearing Denied June 16, 1967.

616

Smith, Miller & Weston, Caldwell, for appellants.

Clemons, Skiles & Green, Boise, for respondents.

McQUADE, Justice.

This is an action to quiet title[1] to a parcel of land slightly larger than one acre, located[2] near McCall, Idaho. Respondents assert ownership through title and possession from the 1920's until 1954 by George and Constance Fleharty, their predecessors with respect to the claimed parcel, and by their own title and possession since 1954. Appellants claim title by a chain of conveyances originating from the land's original patent holder, Samuel D. Hayes. The property in controversy is in a neighborhood of summer houses and cottages, permanent homes, playgrounds and some va-

1. Appellants and respondents each brought a separate action to quiet title; the suits were consolidated in the district court.

2. The land is precisely situated within Lot One (1) of Section Eight (8), Township Eighteen (18) North of Range Three (3) East of the Boise Meridian, Valley County, Idaho.

cant lands.[3] It is contiguous and lies southerly to a .98 acre parcel which concededly was conveyed by deed in 1930 to George Fleharty. In 1954 the combined tract (the .98 acre parcel plus the parcel in controversy) was conveyed by deed to respondents from Constance Fleharty, who had acquired her title upon her husband's death. The following plat sketch, adapted by this Court from a recent engineering survey,[4] illustrates the relative locations of these two parcels.

3. Amended finding of fact XXVI,

"The tracts of ground in controversy are situate upon and adjacent to the shore of Big Payette Lake, the area being of hilly or mountainous terrain containing a growth of pine and other trees and a growth of various mountainous plants and bushes. Some of the surrounding and adjacent area consists of vacant property, but also summer houses or cottages, permanent homes, and playgrounds are situate in the immediate vicinity. Tract A and B1 [B] are suitable and adaptable for residential, either permanent or summer dwelling, and playground purposes."

4. Admitted in evidence, Whites' exhibits 4 and 39.

A is the parcel to which respondents now hold express, uncontested title; B is the parcel in controversy.

The trial court found that the Flehartys had erected in 1932 and maintained[5] until 1954 substantial unbroken fences on the northerly boundary of parcel A from the lake to the highway, along the county highway from the northwesterly corner of A to the southwesterly corner of parcel B, and on the southerly boundary of B from the highway to the lake, enclosing A and B as one tract, and had paid all the assessed taxes[6] on the combined tract (A and B) during that period. The court also found that respondents had maintained the fences in standing condition serving as an enclosure from 1954 until trial, and had paid the assessed taxes for 1954 and 1955. The court found, too, that between 1930 and June 11, 1954, the Flehartys (Constance alone after her husband's death) had been "in possession" of parcel B "holding and claiming possession of the same adversely" to all persons; and that from June 11, 1954, until the trial, respondents adversely held and claimed possession of B. Based on these findings, the court quieted title to parcel B in respondents. This appeal is from that judgment.

Appellants challenge the sufficiency of the evidence to support the trial court's findings.

Regarding respondents' occupation of parcel B, much testimony concerned the existence of a barbed wire fence enclosing the combined tract (A and B) on three sides, excepting only the easterly or lakeside. Robert Wilson, Valley County, Idaho, sheriff from 1927 to 1939 and tax assessor from 1947 to 1953 testified that shortly after 1915 a fence enclosing the combined tract had been first erected. As of 1947, Wilson said, the fence was "standing in good shape" and would have "kept cattle out * * * reasonably so." Beatrice Warren Turner, whose family owned the land northerly adjoining parcel A, testified that a barbed wire fence had stood enclosing tract A and B from 1919 to date of trial; that in the early part of this period she and her brothers and sisters had often been snagged by the part of the fence on the southerly boundary of B; and that she had seen Constance Fleharty repairing the fence every spring until conveyance to the Whites. J. F. Martin, an attorney with a residence 150 feet north of parcel A, testified that in 1932 when he first saw tract A and B, it was all fenced, and that since 1941 he had seen the tract every year and had noticed that it was constantly enclosed by a fence. Perc Shelton, a real estate and insurance man whose McCall property adjoins the Harbert property to the south, testified that since at least 1942 and until the date of trial, tract A and B had been enclosed by one fence which to his knowledge had been repaired every summer by the Flehartys until conveyance to the Whites. The fence, Shelton said, had been in good repair and its wires tight. Susan Harbert, whose property is next to parcel B, southerly, testified that she had seen a fence along the southerly boundary of B every year since 1942. Dr. and Mrs. White both testified that in the spring of 1954 when they first saw tract A and B it was enclosed on three sides by a continuous fence.

Appellant, however, called several witnesses who testified that they had never prior to the 1960's seen a standing fence

---

5. Amended finding VIII. "* * * That said fences have been and are subject to the heavy snow and weather conditions characteristic to that area [McCall, Idaho], but have been kept in repair to the extent of constituting a standing fence and enclosure * * *."

6. Amended finding X. "That from the year 1930 up to and including the year 1953, George Fleharty and his widow, Constance Fleharty, paid all taxes which were levied and assessed against Tracts A and B1 [B], not by virtue of the accuracy of any plat in the Assessor's Office, but by reason of the fact that by the assessment process the actual land in Tract B1 [B] was considered and appraised and assessed to Flehartys and then to the Whites until 1956."

along parcel B's southerly boundary. Appellant himself testified that no fence had stood there since 1931. John Jasper, who since 1933 had lived across the road westerly from tract B, testified that there was no fence along B's southerly boundary; his wife and a daughter corroborated this. Clara Herrick, who had lived across the road westerly from parcel A since 1934, testified that she did not remember any fence along parcel B's southerly boundary. Lois Wilde, who had lived in the neighborhood since 1953, and Vernon Hoss, who had lived there since 1956, both testified that they had not seen a standing fence along B's southerly boundary.

Though the testimony be conflicting, the trial court's findings regarding the fences are grounded on substantial, competent evidence and may not be disturbed. Swanson v. State, 83 Idaho 126, 358 P.2d 387 (1961).

As further proof of respondents' predecessors' conspicuous occupation and use of the land in question, evidence was introduced showing that the combined tract (A and B) was known and referred to in its neighborhood as "the Fleharty property." J. F. Martin used this term during his testimony as did Beatrice Warren Turner, who added that the tract was so referred to "in the neighborhood and everybody talked about it or recognized it as the Fleharty property."

A 1935 decree[7] of the district court of Valley County, Idaho, foreclosing a mortgage held by Frank H. Parsons on land immediately to the south of parcel B refers to the southerly boundary of B as "the South Boundary line of that property known as the Fleharty tract." Parsons' deed to R. B. Halferty refers to the southerly boundary of parcel B as the "South boundary line of that property known as the Fleharty tract," and "the South line of * * * the George Fleharty land." Halferty's conveyance to appellant's father W. B. Boydstun, likewise refers to B's southerly boundary as "the South boundry line of said George Fleharty tract" and the "South line of * * * the George Fleharty land." A decree of settlement of final account and distribution in the estate of W. B. Boydstun, devising in equal shares to appellant-husband and his brother and sister all his property and some land in the lot within which the combined tract (A and B) is located, describes the southerly boundary of parcel B as "the southeast boundary of said Fleharty tract." The instrument by which Neal Boydstun's brother and sister conveyed their interest to him also refers to parcel B's southerly boundary as the "southeast boundary of said Fleharty tract."

Also evidencing respondents' and their predecessors' possession, J. F. Martin testified that the Flehartys alone had used the combined tract (A and B) from 1932 to 1954, and after them only the Whites occupied it. Perc Shelton testified that only the Flehartys had been in possession of the tract until the Whites took occupancy and thereafter "The only people that have lived there has [sic] been the Whites." Robert Wilson testified that the tract "was known as the Fleharty property to me." This community reputation evidence was competent. See Eagan v. Colwell, 86 Idaho 525, 388 P.2d 999 (1964); Case v. Ericson, 44 Idaho 686, 258 P. 536 (1927).

The evidence summarized in the three preceding paragraphs supports the trial court's finding that their predecessors and then respondents openly claimed and

---

7. Admitted in evidence as Boydstun's exhibit 8. The decree states the land's location only in metes and bounds. To determine the land's relative plat location one must translate the technical placements by means of official plat records. This may be accomplished with Boydstun's exhibit 43, also denominated White's exhibit 43a, a reproduction of a plat map from the Valley County assessor's office. The foregoing procedure must also be followed to locate the tract technically identified in the documents which the text discusses immediately following its reference to the foreclosure decree (Boydstun's exhibit 8). These documents are also in evidence, Boydstun's exhibits 9 through 12.

occupied parcel B since 1930, and the finding will not be disturbed. I.R.Civ.P. 52(a); Lindhartsen v. Myler, Idaho, 420 P.2d 259 (1966); Swanson v. State, supra. Appellants object to the trial judge's admission in evidence of an unauthenticated map to which he referred in a memorandum decision (although his findings and amended findings of fact, both filed later, do not mention the map) as partially supporting a determination that parcel B had been "long considered as being part of the Fleharty tract"; this argument need not be considered, however, because other evidence, discussed in the preceding three paragraphs, adequately supports the court's pertinent findings. Hartley v. Bohrer, 52 Idaho 72, 11 P.2d 616 (1932); see Parks v. Parks, 91 Idaho 420, 422 P.2d 618 (1967); Townsend v. Cahoon Constr. Co., 80 Idaho 425, 332 P.2d 880 (1958); cf. I.R.Civ.P. 61.

Concerning taxes assessed and levied on parcel B, the property area assessed to respondents' predecessors for tract A and B was decreased on Valley County tax records during 1947 from two acres to 1.18 acres. There is no showing, however, that respondents were notified by the county assessor prior to this change, and it should be noted that their tax payments were not decreased after the modification.

Regarding the years before 1956, appellants introduced no evidence that they nor any of their predecessors paid taxes on parcel B during that period. The tax records of Valley County show that George Fleharty annually, between 1931 and 1947, paid taxes for two acres. Fleharty owned only one tract in the pertinent area, and

while parcel A comprises but .98 acres, the combined tracts A and B aggregate almost exactly two acres. From 1947 to 1953, the Flehartys' assessment was recorded as 1.18 acres, but Robert Wilson, Valley County assessor during that period, and former sheriff, testified that he had in 1947 physically examined tract A and B and had assessed the whole to the Flehartys. It should be noted too, that although any assessments made were charged to the Flehartys, it is quite possible that no taxes were assessed on parcel B, for Wilson testified that his assessment method was based entirely on lakefront footage and the plat sketch inserted above reveals that B hardly, if at all, touches the shore. In 1954 and 1955, respondents paid all the taxes on the land previously assessed to the Flehartys.

The evidence summarized in the two preceding paragraphs adequately supports the trial court's finding that the Flehartys and then respondents paid whatever taxes were assessed and levied on parcel B between 1931 and 1955.

A claimant who seeks to establish ownership by adverse possession without an instrument of title must show that during a minimum period of five years he has occupied the claimed land under an asserted right, manifesting this claim and occupation by causing the land to be "protected by a substantial enclosure" or "usually cultivated or improved." I.C. § 5–210.[8] Continuous occupation for five years creates a presumption that the possession has been adverse and under a claim of right, Sinnett v. Werelus, 83 Idaho 514, 365 P. 2d 952 (1961). Considering the adaptation of parcel B as part of a summer home in

8. "5–210. *Oral claim—Possession defined —Payment of taxes.*—For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cutivated or improved.

"Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

a neighborhood used primarily for summer homes, the requirements of I.C. § 5–210 for a conspicuous possession under an asserted right are satisfied by the trial court's findings regarding enclosure fences and continuous summertime habitation by respondents' predecessors and then themselves. See Trask v. Success Mining Co., 28 Idaho 483, 488–493, 155 P. 288, 290–291 (1916).

▪ Before a conspicuous possession under adverse claim for the statutory period may ripen into title, it is also essential that taxes assessed and levied on the claimed land be paid by, or in the interest of, the adverse claimant. I.C. § 5–210.[9] This requirement will be satisfied if, during five continuous years of adverse occupation, no taxes are assessed or levied on the claimed land, Hogan v. Blakney, 73 Idaho 274, 251 P.2d 209 (1952), Swank v. Sweetwater Irrigation and Power Co., Ltd., 15 Idaho 353, 98 P. 297 (1908); see Urquide v. Flanagan, 7 Idaho 163, 61 P. 514 (1900), or if the adverse claimant, or his predecessor, has paid all the assessed and levied taxes for any five continuous years during his adverse occupation, although subsequently, and prior to his action to establish ownership by adverse possession, the claimant has ceased while the titleholder has started to pay all the assessed taxes, Cramer v. Walker, 23 Idaho 495, 130 P. 1002 (1913); cf. Stickel v. Carter, 63 Idaho 78, 117 P.2d 477 (1941).

▪ When taxes to land adversely claimed are in fact paid, an erroneous or uncertain assessment will not affect the efficacy of the actual payments, see Calkins v. Kousouros, 72 Idaho 150, 237 P.2d 1053 (1951); Urquide v. Flanagan, supra; Annot., Tax Payments by Adverse Claimant, 132 A.L.R. 216, 227–229 (1941), and it should be noted that in the analogous situation concerning adverse occupation of land

next to the boundary line between the property of the adverse claimant and his opponent, continuous adverse occupation will extend a true boundary line beyond the occupier's express deed limits, so that payment of taxes assessed on the deeded property is deemed payment of taxes on the lands in the claimant's possession. Eagan v. Colwell, 86 Idaho 525, 388 P.2d 999 (1964); Beneficial Life Ins. Co. v. Wakamatsu, 75 Idaho 232, 270 P.2d 830 (1954); O'Malley v. Jones, 46 Idaho 137, 266 P. 797 (1928); see Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066 (1909); Annot., Tax Payments by Adverse Claimant, 132 A.L.R. 216, 227–229 (1941).

▪ The trial court's findings satisfy the tax payment requirements of I.C. § 5–210.

▪ Respondents have shown by the required "clear and satisfactory evidence," Swanson v. State, 83 Idaho 126, 134, 358 P.2d 387, 391 (1961), that their predecessors' and their own possessory conduct with respect to parcel B has fulfilled the essential elements of an adverse possession which ripens into title. The trial court properly quieted title in respondents.

Judgment affirmed. Costs to respondents.

TAYLOR, C. J., and SMITH, McFADDEN and SPEAR, JJ., concur.

## ON DENIAL OF PETITION FOR REHEARING

McQUADE, Justice.

Appellants' petition for rehearing, which notes that the opinion filed in this action does not discuss one of their assignments of error, is limited to questions concerning whether the trial court properly found respondents proved that their predecessors had satisfied the tax payment requirements of I.C. § 5–210.[1] Appellants specifically

---

9. Ibid.

1. "5–210. *Oral claim—Possession defined —Payment of taxes.*
    * * * in no case shall adverse possession be considered established under

the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and

contend that the opinion has overruled sub silentio Blayden v. Morris, 37 Idaho 37, 214 P. 1039 (1923).

The assignment of error to which appellants refer is an objection to a trial court ruling under which Robert Wilson, Valley County assessor during the period 1947 to 1953, was permitted to testify regarding the extent of land which he had assessed in 1947 as belonging to respondents' predecessors, the Flehartys. Wilson testified that he had examined physically tract A and B and assessed the whole to the Flehartys; he "assessed everything within the perimeter of this fence [bounding tract A and B]." Relying on Blayden v. Morris, supra, appellants contend that the assessment plat maps and records of Valley County were the only evidence competent to show actual payment of taxes. Thus, Wilson's testimony was inadmissible, appellants argue, and inasmuch as it is the basis for the trial court's finding that respondents' predecessors had paid all taxes levied and assessed on parcel B from 1930 to 1953, that finding should be disregarded and the judgment reversed.

One question necessarily presented by appellants' petition concerns the import of Wilson's testimony. Appellants note correctly that the trial court's memorandum decision and findings expressly rely on Wilson's testimony, but this Court's opinion emphasizes primarily that

"The tax records of Valley County show that George Fleharty annually, between 1931 and 1947, paid taxes for two acres. Fleharty owned only one tract in the pertinent area, and while parcel A comprises but .98 acres, the combined tracts

A and B aggregate almost exactly two acres."

The opinion also states:

"the property area assessed to respondents' predecessors for tract A and B was decreased on Valley County tax records during 1947 from two acres to 1.18 acres. There is no showing, however, that respondents were notified by the county assessor prior to this change, and it should be noted that their tax payments were not decreased after the modification."

Pertinent in this regard is a conflict between two plat maps from the Valley County assessor's office, Boydstuns' exhibit 43 (Whites' exhibit 43a), and Whites' exhibit 5 (enlarged in Whites' exhibit 6). The first map (exhibit 43) shows appellants as the assessed owners of parcel 'B, but it was not drawn until the middle 1950s, the second map (exhibits 5 and 6) lists appellants' only assessed property in the lot and section within which parcel B is located as a twenty-five foot easement between the southerly boundary of the land assessed to the Flehartys (and then to respondents) and that assessed to Susan A. Harbert whose property's northerly boundary is in fact twenty-five feet southerly of parcel B's southerly boundary. The metes and bounds description contained in Boydstun's exhibit 37, a register of tax numbers upon which appellants primarily rely to support their petition, also is contradicted by the plat tracings in Whites' exhibits 5 and 6.

█ The testimony of Wilson to which appellants object concerns only assessments for the years 1947 and after,[2] and so has no

---

grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

2. The opinion's complete discussion of Wilson's testimony regarding assessments is as follows:

"From 1947 to 1953, Flehartys' [respondents' predecessor] assessment was recorded as 1.18 acres, but Robert Wilson, Valley County assessor during that

period, and former sheriff, testified that he had in 1947 physically examined tracts A and B and had assessed the whole to Fleharty. It should be noted too, that although any assessments made were charged to Fleharty, it is quite possible that no taxes were assessed on parcel B, for Wilson testified that his assessment method was based entirely on lakefront footage and the plat sketch inserted above reveals that B hardly, if at all, touches the shore."

bearing on the period from 1931 to 1947 during which the Flehartys were assessed for two acres while apparently appellants' assessment was limited to a twenty-five foot strip below the southerly boundary of the Flehartys' property. As stated in the opinion, any five continuous years during which the adverse claimant or his predecessor has paid all assessed and levied taxes on the claimed land will satisfy the tax payment requirement of I.C. § 5–210. The information contained in the assessor's records themselves, therefore, is properly susceptible to an inference that respondents' predecessors were assessed and paid taxes on parcel B for a longer period than necessary to satisfy the tax payment requirements for adverse possession, and so even had this Court favorably considered appellants' assignment of error and decided that Wilson's testimony was incompetent, such trial court error would have been harmless and the judgment still affirmed. See Idaho R.Civ.P., 61; Hartley v. Bohrer, 52 Idaho 72, 11 P.2d 616 (1932); cf. Parks v. Parks, 91 Idaho 420, 422 P.2d 618 (1967).

Nevertheless, because the trial court relied expressly on Wilson's testimony and since appellants have argued so vigorously that the testimony was incompetent, that assignment of error should be discussed.

The inconsistencies in the assessment records presented in this action create a state of confusion in which respondents' predecessors were or were not assessed for parcel B depending on which record the investigator considers. In addition to the conflicting plat maps discussed above, the metes and bounds description contained in the county register of tax numbers on which appellants primarily rely contains internal inconsistencies: under tax #71, respondents' predecessors' property is described as only parcel A; but in the description under tax #74, the southerly boundary of their property is the same as the southerly boundary of parcel B.

▮▮▮ Whether the records list a person as assessed taxpayer for a particularly described property is, of course, a question

different from whether he was in fact assessed for the property and did pay the taxes on it. The criterion of I.C. § 5–210 is actual payment of assessed taxes, not a listing on county records as assessed taxpayer, and so assessment records are admitted in evidence not for their own sake, but rather for their relevance in determining actual assessment and payment of taxes. Assessment record descriptions are probative regarding the extent of property actually assessed, and if the records are clear, precise and consistent (which the records here are not), it may be presumed that the listings they contain describe the actual assessments. But this does not make incompetent and inadmissible other relevant evidence, for example, that of present concern, the testimony of an assessor regarding his physical examination of property circumscribed by a fence and his assessment based on the examination. See Calkins v. Kousouros, 72 Idaho 150, 156, 237 P.2d 1053, 1057 (1951); cf. Eagan v. Colwell, 86 Idaho 525, 388 P.2d 999 (1964); Beneficial Life Ins. Co. v. Wakamatsu, 75 Idaho 232, 270 P.2d 830 (1954); Edgeller v. Johnston, 74 Idaho 359, 262 P.2d 1006 (1953); Mulder v. Stands, 71 Idaho 22, 225 P.2d 463 (1950); O'Malley v. Jones, 46 Idaho 137, 266 P. 797 (1928); Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066 (1909); Annot., Tax Payments by Adverse Claimant, 132 A.L.R. 216, 227–229 (1961). It should be emphasized that evidence besides the assessment records is admitted not in order to cause a physical alteration of the records, indeed the assessment descriptions must remain as listed even if the trier of fact finds the actual assessment has varied from that described. This other evidence is admitted because the question of material fact is not what the records reflect was assessed, but what was in fact assessed. It may be added that were evidence other than assessment records not admissible to show satisfaction of the tax payments required by I.C. § 5–210, the statutory device of obtaining title by adverse possession would become almost meaningless. See I.C. § 5–206; cf. I.C.

§§ 5–209 and 5–210; Calkins v. Kousorous, supra.

In Blayden v. Morris, supra, which appellants cite for the proposition that no evidence except assessment records themselves is competent concerning the extent of property on which a claimant has paid taxes, this Court upheld a ruling which refused to permit an adverse claimant himself to testify that at the time his land was assessed,

> "he pointed out the lands in question to the assessor as being part of his lands, and that this was given to the assessor for the purpose of enabling the assessor to arrive at a valuation of the land, and particularly as to the acreage of appellants' land which was under improvement and which was being farmed and cultivated at that time." Idaho Sup.Ct. case #3802, tr. p. 80, f. 221–222. See also Blayden v. Morris, supra, 37 Idaho at 41, 214 P. at 1040.

The sustained objection to this offer of proof was a general one, that it was "incompetent, irrelevant and immaterial." Idaho Sup.Ct. case #3802, tr. pp. 80–81, f. 222, 214 P. at 1040. See also Blayden v. Morris, supra, 37 Idaho at 41, 214 P. at 1040. The Blayden opinion states that the claimant in fact paid taxes only upon his property as assessed "by legal subdivision or regular portions thereof," id. at 40, 214 P. at 1040, and that the strip of land claimed was irregular, "varying from nothing to an extreme width of approximately 100 feet," ibid.; while the assessor's plat followed the regular straight quarter line. Ibid.

In its discussion of the offered testimony's probative value, the court said:

> "Had such evidence been admitted, it would not have proven that these lands had been assessed to appellants, nor would it have proven that appellants had paid any taxes whatever thereon. This evidence was therefore clearly inadmissible." Id. at 42, 214 P. 1041.

This statement concerns the probative value or relevance of the offered testimony, not its competence. The statement expresses an opinion that, if admitted, the testimony would have tended to show only that the claimant had indicated to the assessor that he possessed the land in dispute, and so would have been no direct proof that appellant was then actually assessed and paid taxes on it. In this regard it may be noted that Blayden stresses that before and after the alleged assessment claimant and his opponent each was assessed and in fact paid taxes upon his land by subdivision description alone. If the quoted statement contains the court's reason, it would seem that the ruling was upheld primarily on grounds that the offered testimony carried no weight with respect to the actual assessment. Thus, Blayden would be no direct authority concerning the competence of a county assessor's testimony about actual assessments.

The Blayden opinion, nevertheless, also includes several broad assertions that assessment records are the only competent evidence regarding what lands actually were assessed, for example "the official records are the only means by which can be shown the property actually assessed," Blayden v. Morris, supra at 41, 214 P. at 1040, and assessment record "descriptions cannot be impeached, varied, or explained by parol evidence." Id. at 41–42, 214 P. at 1040. Those declarations from Blayden v. Morris, supra, must be disapproved insofar as they vary from the views in this opinion.

Petition denied June 16, 1967.

TAYLOR, C. J., and SMITH, McFADDEN and SPEAR, JJ., concur.