722 P.2d 497

Wayne F. ALLEN and Shirley Allen, husband and wife, Plaintiffs-Respondents,

v.

Neal BOYDSTUN, Pearl Boydstun, and Boydstun Beach Association, Defendants-Appellants.

No. 15742.

Court of Appeals of Idaho.

June 30, 1986.

and Shirley Allen. The Allens claim the strip, referred to as the "gap" property, by way of a quitclaim deed from their predecessors-in-interest. The Boydstun Beach Association claims ownership by way of a quitclaim deed from Neal and Pearl Boydstun and asserts that the "gap" property was never included in the Allens' chain of title. The trial court quieted title to the "gap" in the Allens. We affirm the judgment.

The Allens initially sued Valley County and the appellants, seeking to have a recorder's plat reformed, alleging trespass, slander of title and violation of easement rights. The court treated the action as one for quiet title to the "gap" property. Appellants raise four issues, the principal one being that the court erred in its determination of the grantor's intent when the court construed the deed describing the present Allen lot. Related issues are discussed later in this opinion.

The land involved in this lawsuit is near McCall, between Payette Lake and the Warren Wagon Road. It is located within Lot 1, Section 8, Township 18 North, Range 3 East, Boise Meridian (hereinafter Government Lot 1). The following is an illustrative sketch. The shaded area is the disputed gap property.

Gordon S. Nielson, Boise, for defendants-appellants.

Frank T. Elam, of Udell & Elam, McCall, for plaintiffs-respondents.

SWANSTROM, Judge.

At issue in this dispute is the ownership of a narrow strip of land lying between an easement owned by several persons, including appellants, and a lot owned by Wayne

PLAT OF GOVERNMENT LOT 1

Sec. 8 T. 18 N., R. 3 E. B. M.

Over the years Government Lot 1 has been divided and conveyed to many owners. Two points of commencement have been used in the various deeds and court decrees. One is the northwest corner of Government Lot 1. It is the common corner of Sections 5, 6, 7, and 8. The other point is at the intersection of the east side of Warren Wagon Road with the south boundary of Government Lot 1.

Turning to the history of the land, the first pertinent conveyance occurred in 1926 when the easement was created in a conveyance of land on the west side of the Warren Wagon Road. The easement, providing for access to the lake and use of the beach, was described as follows:

a right of way with privileges of ingress and egress over a drive 25 feet wide across Lot 1, Section 8, T. 18 N., R. 3 E., B.M., beginning about 700 feet south of the N.W. corner of said Lot 1, and adjoining the tract of land belonging to George Fleharty and leading from the [Warren Wagon Road] in a northeasterly direction along the southerly line of said tract to the shore of Payette Lake, together with parking space extending along the beach in a southeasterly direction 200 feet from north line of said drive, and extending 75 feet in width from the meander line, and boating and bathing privileges along said 200 ft strip, and these presents provide, that, no structures or tents shall be erected along said 200 feet of beach, or parking space; . . . .

The exact location and legal description of this easement was not determined until 1965 following a suit among the Boydstuns, the Whites and others over ownership

of property adjacent to the easement. In that suit the district court determined that the southeasterly boundary of the White tract is the northwesterly boundary of the easement described above. A metes and bounds description was set forth in the judgment. On appeal to the Idaho Supreme Court that decision was affirmed. *See White v. Boydstun,* 91 Idaho 615, 428 P.2d 747 (1967).

As shown in the foregoing sketch, the tract owned by the Allens (hereinafter the Allen lot) lies southeasterly of the driveway easement. On its lakeside end the Allen lot is subject to the beach-use easement described above.

The earliest conveyance in the record on appeal of what is now the Allen lot is a deed from Frank and Anna Parsons to R.B. Halferty, dated April 8, 1940. The description commences at the intersection of the Warren Wagon Road and the southern line of Government Lot 1. The northwest boundary was described as the south line of the Fleharty tract. This deed excepts the easement located along the "South line of and next to the George Flehardy [sic] land, ... as described in a certain deed ... dated October 20, 1926, ...."

Next is a deed dated October 1, 1940 conveying part of the property mentioned above from the Halfertys to W.B. Boydstun. The rectangular tract conveyed was approximately 100 by 400 feet. The description in metes and bounds begins 580 feet from the intersection of the easterly side of the road and south line of Government Lot 1, the same commencement point as the prior Parsons deed. The lakeside line of the tract is described as a course "Northwesterly along the Lake Shore 100 feet, more or less, to the South line of the George Flehardy [sic] Tract, ...." This deed, like the Parsons deed, also describes the northerly line of the tract as the south boundary line of the Fleharty tract and makes the conveyance subject to the twenty-five foot easement.

W.B. Boydstun in turn conveyed seventy-five feet of his one hundred foot tract to W.H. Harbert in 1942. This deed used the same point of beginning as did the prior deed to Boydstun. It did not, however, convey the twenty-five foot easement strip. The property conveyed was described as follows:

Commencing at the intersection of the East boundry [sic] line of the County Road Right of Way with the South boundry [sic] line of lot 1, Section 8, Township 18 North, Range 3 East, B.M., go in a northwesterly direction along the tast [sic] boundry [sic] line of the County Road Right of Way, a distance of 580 feet, to Point of beginning; thence North 38° East and parallel with the North boundry [sic] line of the Reilly Atkinson tract, 400 feet, more or less to the Shore of Big Payette Lake; thence along the Lake Shore, Westerly 75 feet; thence South 38° West and parallel with the East linf [sic] of this tract, 400 feet, more or less, to the East boundry [sic] line of the County Road Right of Way, thence, Easterly, along the said boundry [sic] line of said County Road Right of Way, 75 feet to Point of Beginning.

This deed is the source of much of the controversy in the present action. The district court found that W.B. Boydstun intended to convey all of his tract except the twenty-five foot strip burdened by the easement.

In 1977 the Allens received their property by quitclaim deed from the personal representative of the estate of Susan Harbert.[1] The deed used the same description

---

1. Susan Harbert had been a party in one of the two cases consolidated in *White v. Boydstun, supra.* In that action the district court quieted the title to the Harbert tract in Susan Harbert, ruling that Neal Boydstun and Pearl Boydstun "have no right, title or interest in or to said property." The description was similar to, but not identical with, the above-quoted description

Neal Boydstun's father had used in conveying the property to Susan's husband in 1942.

Apparently this ruling of the district court was not appealed by the Boydstuns for the Supreme Court did not mention it. The Supreme Court did note that the "northerly boundary" of the Susan A. Harbert property (now the Allen lot) "is in fact twenty-five feet southerly of [the

as the Boydstun-Harbert deed and was subject to the twenty-five foot driveway easement and to the seventy-five foot beach front easement created on October 20, 1926.

Both sides claim benefit of the rule that a grantee cannot acquire a larger parcel than the grantor owns and can convey. *Gardner v. Fliegel*, 92 Idaho 767, 450 P.2d 990 (1969). The parties on each side claim that title to the gap property existed in their immediate predecessor, and therefore, could not be granted to the other. The controversy hinges upon the deed from W.B. Boydstun to W.H. Harbert conveying seventy-five feet of lake front property.

The trial court, finding the deed ambiguous due to an uncertain point of commencement, looked to W.B. Boydstun's intent in deciding that there exists no gap between the Harbert property and the easement. Appellants contend there was no ambiguity in the deed and that the court construed W.B. Boydstun's intent contrary to the unambiguous description contained in the deed.

In construing a deed the court should, if possible, give effect to the intent of the parties. *Gardner v. Fliegel, supra; Hogan v. Blakney*, 73 Idaho 274, 251 P.2d 209 (1952). If a deed is plain and unambiguous, the general rule is that the intent must be ascertained from the deed. *Gardner v. Fliegel, supra.* The W.B. Boydstun deed is, in isolation, plain on its face. However, the trial judge found the commencement point, the intersection of the east line of Warren Wagon Road and the south line of Government Lot 1, to be an uncertain point. In *Hogan, supra*, our Supreme Court quoted 16 AM.JUR, DEEDS § 168 at 531–32:

> The tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered

from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time.

In *Campbell v. Weisbrod*, 73 Idaho 82, 245 P.2d 1052 (1952) an uncertain point of beginning rendered the deed ambiguous. There, as here, the use of a seemingly unambiguous description led to problems locating the parcel on the ground. Such uncertainty creates ambiguity.

■ The appellants presented testimony from an engineer, Mr. Kerr, who had prepared a plat purporting to show the location of the Allens' lot and the easement. This exhibit, like the recorder's plat, showed the gap. The Allen lot was platted using the intersection of the south line of Government Lot 1 with the east boundary line of Warren Wagon Road as the point of commencement. However, none of the conveyances refer to that point as being marked. The engineer testified that the point is now marked, and that he has, in the past, tied that point to the government survey. There was no showing that the pin presently in place was there or was used for measurements when the Haferty to W.B. Boydstun deed was prepared in 1940. Nor was there any showing of who placed it or when it was placed. We hold that it was not error for the court to rule the point of commencement of the Haferty-Boydstun deed is uncertain.

■ The trial court went on to find it to be "absolutely clear" that the grantors in the Haferty to W.B. Boydstun and W.B. Boydstun to Habert conveyances did not intend to leave a gap between the Harbert property and the easement. Once a deed is found to be ambiguous, the interpretation of the grantor's intent is a matter of fact for the trier of fact. *Latham v. Garner*, 105 Idaho 854, 673 P.2d 1048 (1983). We will not disturb a finding of fact unless it is clearly erroneous. I.R.C.P. 52(a).

Whites'] southerly boundary." *White v. Boydstun*, 91 Idaho at 623, 428 P.2d at 755. In arguments to this Court in the present appeal the appellants characterize the statement as dicta because no specific finding was made by the

district court correlating the southerly boundary of the White property with the northerly boundary of the Harbert tract. The judgment used different starting points to describe the two parcels.

W.B. Boydstun received 100 feet of lake front property, burdened by a twenty-five foot easement on the northwest side. He conveyed seventy-five feet of it to Harbert. The trial court decided that since seventy-five and twenty-five add up to one hundred it was Boydstun's intent to convey the same land he had received from Haferty, excluding the twenty-five foot strip burdened by the driveway easement.

Appellants point out that the northwest line of the easement, described as the southerly line of the Fleharty tract, is not a straight line, and that W.B. Boydstun made the northwest line of the seventy-five foot tract parallel to its southeast boundary, a straight line. At most, this gives rise to conflicting inferences. However, it must be remembered that when W.B. Boydstun conveyed the tract to Harbert in 1942 there was no precise description of record for the driveway easement. The deed creating this easement "along the southerly line of [the George Fleharty] tract" gave no hint that the boundary was anything but a straight line. The actual course of the easement was later established by the district court in the *White* case following a survey of a long-existing fence line. Both side lines of the driveway easement were settled in the *White* decree entered on May 25, 1965, and affirmed in *White v. Boydstun, supra*.

Part of the property involved in the *White* quiet title suit was a tract of land to the immediate northwest of the easement. This is the same property as what had previously been the Fleharty land. The White tract and the driveway easement were held to have a common boundary line which was described by metes and bounds in the *White* decree. As a result of the Whites' successful claim of ownership up to the fence line, by adverse possession, the fence line became the common boundary between the Whites' property and the twenty-five foot easement. It follows that the southerly line of the easement paralleled the northerly line at a distance of twenty-five feet. Thus, the course of the easement, as it was established in the *White* case, deviated slightly from a straight line. The *White* decree used the section corner to the northwest as the starting point to describe the easement. The description in the Boydstun-Harbert deed (for the Allen lot) on the other hand was tied to a different starting point. The precise relationship between these two starting points was not determined in the *White* suit, nor had it been previously determined. Thus, even after the *White* case was concluded, there was room to argue that a "gap" remained.

■ Appellants also assert that the trial judge erred in giving little weight and legal effect to the "Recorder's Plat" of Government Lot 1 in resolving the boundary dispute in this case. The plat in question, filed in 1972, came well after the deeds establishing the parties' boundaries. The predecessor to the recorder's plat, an assessor's plat, had been found in the *White* case to be inaccurate and erroneous. The recorder's plat perpetuated those errors. An engineer testified that the recorder's plat, though internally consistent, did not match the deed descriptions. It was not shown that in preparing the plat an attempt had been made to establish lot lines on the ground following the record titles. These reasons, as well as others carefully explained by the trial judge in his memorandum decision, justified his placing little reliance upon the plat. We hold that this was not error. We conclude, finally, that the district court did not err in interpreting the intent of the grantors in the Haferty-Boydstun and Boydstun-Harbert deeds.

■ Appellants assign as a separate error the failure of the trial court to quiet title to the driveway easement strip and to the gap property in Boydstun Beach Association. By reason of our holding that the Allens were rightfully found to be owners of the gap, we dispose of part of appellants' assigned error. As to the remainder, that the trial court erred by failing to find that the Boydstun Beach Association is the owner in fee of the twenty-five foot strip burdened by the driveway easement, we will discuss it briefly. The Association

claims to be the owner of the fee by virtue of a quitclaim deed from Neal and Pearl Boydstun. However, the Boydstuns' title was never placed in evidence so the court declined to decide the issue and held that the Boydstuns and the Association are easement holders. We note that the exhibits in the *White* case include a decree of distribution of the W.B. Boydstun estate and a deed from other Boydstun heirs to Neal Boydstun. However, in the present case, this evidence was not offered. In their counterclaim, appellants alleged title by adverse possession and color of title, but these claims were abandoned at trial. Not having placed the fee ownership of the twenty-five foot strip in issue, the appellants cannot now complain because it was not decided. We have, however, proceeded on the assumption that the Association is the record owner.

We have examined the other errors assigned by appellants and conclude that they lack merit. Accordingly, we affirm the judgment below.[2] Costs to respondents, the Allens. No attorney fees are awarded.

WALTERS, C.J., and BURNETT, J., concur.

---

2. Due to a typographical error, the southeasterly side line of the Allen lot is erroneously described in the district court's judgment as being 576.76 feet in length. The correct length, according to the surveyor's plat, is 476.76 feet. The district court may wish to correct this error.